# IN THE SUPREME COURT OF CALIFORNIA

LUIS GONZALEZ,
Plaintiff and Appellant,

v.

JOHN R. MATHIS et al.,
Defendants and Respondents.

S247677

Second Appellate District, Division Seven
B272344

Los Angeles County Superior Court
BC542498

August 19, 2021

Justice Groban authored the opinion of the Court, in which
Chief Justice Cantil-Sakauye and Justices Corrigan, Liu,
Cuéllar, Kruger, and Jenkins concurred.

GONZALEZ v. MATHIS

S247677

Opinion of the Court by Groban, J.

There is a strong presumption under California law that a hirer of an independent contractor delegates to the contractor all responsibility for workplace safety. (See generally *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*); *SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590 (*SeaBright*).) This means that a hirer is typically not liable for injuries sustained by an independent contractor or its workers while on the job. Commonly referred to as the *Privette* doctrine, the presumption originally stemmed from the following rationales: First, hirers usually have no right to control an independent contractor's work. (*Privette*, at p. 693.) Second, contractors can factor in "the cost of safety precautions and insurance coverage in the contract price." (*Ibid*.) Third, contractors are able to obtain workers' compensation to cover any on-the-job injuries. (*Id.* at pp. 698–700.) Finally, contractors are typically hired for their expertise, which enables them to perform the contracted-for work safely and successfully. (*See id.* at p. 700; Rest.3d Torts, Liability for Physical and Emotional Harm, § 57, com. c, p. 402.)

We have nevertheless identified two limited circumstances in which the presumption is overcome. First, in *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198 (*Hooker*), we held that a hirer may be liable when it retains control over any part of the independent contractor's work and negligently exercises that retained control in a manner that affirmatively contributes to the worker's injury. (*Id.* at p. 202.)

1

Second, in *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659 (*Kinsman*), we held that a landowner who hires an independent contractor may be liable if the landowner knew, or should have known, of a concealed hazard on the property that the contractor did not know of and could not have reasonably discovered, and the landowner failed to warn the contractor of the hazard. (*Id.* at p. 664.)

We granted review in this case to decide whether a landowner may also be liable for injuries to an independent contractor or its workers that result from a known hazard on the premises where there were no reasonable safety precautions it could have adopted to avoid or minimize the hazard. We conclude that permitting liability under such circumstances, thereby creating a broad third exception to the *Privette* doctrine, would be fundamentally inconsistent with the doctrine. When a landowner hires an independent contractor to perform a task on the landowner's property, the landowner presumptively delegates to the contractor a duty to ensure the safety of its workers. This encompasses a duty to determine whether the work can be performed safely despite a known hazard on the worksite. As between a landowner and an independent contractor, the law assumes that the independent contractor is typically better positioned to determine whether and how open and obvious safety hazards on the worksite might be addressed in performing the work. Our case law makes clear that, where the hirer has effectively delegated its duties, there is no affirmative obligation on the hirer's part to independently assess workplace safety. Thus, unless a landowner retains control over any part of the contractor's work and negligently exercises that retained control in a manner that affirmatively contributes to the injury (*Hooker*, *supra*, 27 Cal.4th at p. 202), it

will not be liable to an independent contractor or its workers for an injury resulting from a known hazard on the premises. Because the Court of Appeal held otherwise, we reverse the judgment.

## I. BACKGROUND

This case comes before us after the trial court granted a motion for summary judgment. We therefore "take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party. [Citation.]" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

Defendant John R. Mathis lives in a one-story house with a flat, sand-and-gravel roof. The roof contains a large skylight covering an indoor pool. Plaintiff Luis Gonzalez is a professional window washer who first started cleaning Mathis's skylight in the 1990s as an employee of Beverly Hills Window Cleaning. In the mid-2000s, Gonzalez started his own professional window washing company. Gonzalez advertised his business as specializing in hard to reach windows and skylights. His marketing materials stated that he "trains his employees to take extra care . . . with their own safety when cleaning windows."

In or around 2007, Mathis began regularly hiring Gonzalez's company to clean the skylight. Gonzalez would climb a ladder affixed to the house to access the roof. Directly to the right of the top of the ladder, a three-foot-high parapet wall runs

parallel to the skylight. Mathis constructed the parapet wall for the aesthetic purpose of obscuring air conditioning ducts and pipes from view. The path between the edge of the roof and the parapet wall is approximately 20 inches wide. Gonzalez would walk between the parapet wall and the edge of the roof and use a long, water-fed pole to clean the skylight. Gonzalez testified that he did not walk on the other side of the parapet wall — i.e., between the parapet wall and the skylight — because air conditioning ducts, pipes, and other permanent fixtures made the space too tight for him to navigate.

On August 1, 2012, at the direction of Mathis's housekeeper, Gonzalez went up on to the roof to tell his employees to use less water while cleaning the skylight because water was leaking into the house. While Gonzalez was walking between the parapet wall and the edge of the roof on his way back to the ladder, he slipped and fell to the ground, sustaining serious injuries. Gonzalez did not have workers' compensation insurance.

Gonzalez contends that his accident was caused by the following dangerous conditions on Mathis's roof: (1) Mathis's lack of maintenance caused the roof to have a very slippery surface made up of "loose rocks, pebbles, and sand"; (2) the roof contained no tie-off points from which to attach a safety harness; (3) the roof's edge did not contain a guardrail or safety wall; and (4) the path between the parapet wall and the roof's edge was unreasonably narrow and Gonzalez could not fit between the parapet wall and the skylight due to obstructing fixtures. Gonzalez testified that he knew of these conditions since he first started cleaning Mathis's skylight, although the roof's condition became progressively worse and more slippery over time. Gonzalez also testified that he told Mathis's housekeeper and

accountant "months before the accident" that the roof was in a dangerous condition and needed to be repaired, though Gonzalez did not indicate that his work of cleaning the skylight could not be performed safely absent the roof's repair.

The trial court granted Mathis's motion for summary judgment, finding that Mathis owed no duty to Gonzalez pursuant to the *Privette* doctrine.  The Court of Appeal reversed. It held that a landowner may be liable to an independent contractor or its workers for injuries resulting from known hazards in certain circumstances.  (*Gonzalez v. Mathis* (2018) 20 Cal.App.5th 257, 272–273 (*Gonzalez*).)  More specifically, the Court of Appeal relied on dicta in *Kinsman* providing that, " 'when there is a known safety hazard on a hirer's premises that can be addressed through reasonable safety precautions on the part of the independent contractor, . . . the hirer generally delegates the responsibility to take such precautions to the contractor' " (*Gonzalez*, at p. 268) to hold that, "[a]s a corollary, the hirer can be held liable when he or she exposes a contractor (or its employees) to a known hazard that cannot be remedied through reasonable safety precautions" (*id.* at pp. 272–273). The Court of Appeal additionally held that disputed issues of material fact existed as to whether Gonzalez could have taken reasonable safety precautions to avoid the danger, precluding summary judgment.  (*Id.* at pp. 273–274.)

We granted review.

## II. DISCUSSION

The *Privette* doctrine holds that a hirer generally delegates to an independent contractor all responsibility for workplace safety and is not liable for injuries sustained by the contractor or its workers while on the job.  We are asked to

determine whether, despite the *Privette* doctrine, a landowner may be liable for injuries stemming from a known hazard on the premises that neither the contractor nor its workers could have avoided through the adoption of reasonable safety precautions. To resolve this, it is helpful to provide an overview of the principles underlying *Privette* and its progeny. We then discuss the general premises liability rules that apply to known hazards on the landowner's property. Finally, we discuss whether, under *Privette*, a landowner delegates to an independent contractor any duty it might otherwise owe under the usual premises liability rules to protect the contractor or its workers from known hazards on the property.

### A. The *Privette* Doctrine

In *Privette*, we considered whether a landowner could be liable for injuries sustained when an independent contractor's employee fell off a ladder while carrying hot tar up to a roof during a roof installation. (*Privette*, *supra*, 5 Cal.4th at pp. 691–692.) We held that the doctrine of peculiar risk — which provides that landowners are vicariously liable for injuries to third parties resulting from the negligence of independent contractors in performing inherently dangerous work on the landowners' property — does not apply to injuries sustained by the contractor's own employees. (*Ibid.*) We explained that the doctrine was meant to ensure that third parties received compensation from the person who benefitted from the work (i.e., the landowner) in the event the contractor was insolvent. (*Id.* at p. 701.) The availability of workers' compensation, however, eliminates this concern as to the contractor's own employees by ensuring that the employees will receive some compensation for their injuries. (*Id.* at pp. 701–702.) We also noted that allowing a contractor's employees to sue the hirer

would lead to the anomalous result where the "nonnegligent person's liability for an injury is greater than that of the person whose negligence actually caused the injury" because the contractor's exposure would be limited to workers' compensation while the hirer would be subject to tort damages. (*Id.* at p. 698.) We further observed that imposing tort liability on hirers "would penalize those individuals who hire experts to perform dangerous work rather than assigning such activity to their own inexperienced employees." (*Id.* at p. 700.)

Over the nearly three decades since we decided *Privette*, we have repeatedly reaffirmed the basic rule that a hirer is typically not liable for injuries sustained by an independent contractor or its workers while on the job. Our more recent cases emphasize delegation as the key principle underlying this rule: Because the hirer presumptively delegates to the independent contractor the authority to determine the manner in which the work is to be performed, the contractor also assumes the responsibility to ensure that the worksite is safe, and the work is performed safely. (*SeaBright*, *supra*, 52 Cal.4th at p. 600.) This rule applies even where the hirer was at least partially to blame due to its negligent hiring (*Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235, 1238) or its failure to comply with preexisting statutory or regulatory workplace safety requirements (*SeaBright*, at p. 594). It also applies to a solo independent contractor who has no employees and who has declined to obtain workers' compensation insurance, such that the contractor will receive no coverage for his or her injuries. (*Tverberg v. Fillner Construction, Inc.* (2010) 49 Cal.4th 518, 521 (*Tverberg*).)

We have nonetheless identified two situations in which a hirer has failed to effectively delegate all responsibility for

7

workplace safety to the independent contractor. First, in *Hooker*, we held that a hirer will be liable where it exercises retained control over any part of the contractor's work in a manner that affirmatively contributes to the worker's injuries. (*Hooker*, *supra*, 27 Cal.4th at p. 202.) The hirer in *Hooker* had contractually retained the right to correct certain dangerous conditions on the worksite that were created by the contractor's work. (*Ibid*.) We nevertheless rejected the plaintiff's argument that such retained control over the safety conditions of the worksite, in and of itself, was sufficient to establish liability. (*Id*. at pp. 210–211.) We reasoned "it would be unfair to impose tort liability on the hirer of the contractor merely because the hirer retained the ability to exercise control over safety at the worksite" since "the person primarily responsible for the worker's on-the-job injuries[] is limited to providing workers' compensation coverage." (*Id*. at p. 210.) But if the hirer negligently exercises its retained control "in a manner that affirmatively contributes to an employee's injuries, it is only fair to impose liability on the hirer." (*Id*. at p. 213.) We also made clear in *Hooker* that this exception to *Privette* is not met solely because a hirer is aware that there is an unsafe condition on the worksite or knows that the contractor is engaging in an unsafe work practice. (See *id*. at pp. 214–215.) Something more is required, such as " 'inducing injurious action or inaction through actual direction' " (*id*. at p. 211); directing " 'the contracted work be done by use of a certain mode' " (*id*. at p. 215); or interfering with " 'the means and methods by which the work is to be accomplished' " (*ibid*.). Thus, we found that the hirer in *Hooker* did not exercise its retained control in a manner that affirmatively contributed to the injury where it merely permitted vehicles to use the overpass and knew that, in order

to allow vehicles to pass through, the contractor's crane operator was required to engage in the unsafe practice of retracting the crane's stabilizing outriggers. (*Id.* at pp. 214–215.) But we did find that the hirer in *Hooker*'s companion case, *McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219 (*McKown*), exercised its retained control in a manner that affirmatively contributed to the injury where it requested the independent contractor to use the hirer's own defective equipment in performing the work. (*Id.* at p. 225.)

Second, in *Kinsman*, we addressed whether a landowner may be liable for injuries sustained by an independent contractor's employee that were caused by a concealed hazard; specifically, hidden asbestos dust and debris at a worksite. We held that the landowner could be liable if "the landowner knew, or should have known, of a latent or concealed preexisting hazardous condition on its property, the contractor did not know and could not have reasonably discovered this hazardous condition, and the landowner failed to warn the contractor about this condition." (*Kinsman, supra,* 37 Cal.4th at p. 664, fn. omitted.) We based our holding on the premises liability rule that a landowner has a duty to warn a visitor of a dangerous condition on the property " 'so that [the visitor], like the host, will be in a position to take special precautions when [the visitor] comes in contact with it.' " (*Kinsman,* at p. 673, quoting *Rowland v. Christian* (1968) 69 Cal.2d 108, 119; see also Rest.2d Torts, § 343.) Our holding was also grounded in *Privette*'s strong presumption in favor of delegation. We explained that, while a landowner delegates to an independent contractor the duty to protect its workers against hazards on the worksite, such delegation "is ineffective when the hirer, as landowner, fails to provide the contractor with the information — the existence of

a latent hazard — necessary to fulfill that responsibility." (*Kinsman*, at p. 679; see also *id*. at p. 673.)

## B. Premises Liability Rules Applicable to Known Hazards

As described above, *Kinsman* involved a concealed hazard, which is not at issue here. Nonetheless, we discussed in *Kinsman* the usual landowner liability rule regarding an obvious hazard that applies to persons who visit the premises. (*Kinsman*, *supra*, 37 Cal.4th at pp. 672–674.) We explained that, typically, " 'if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the condition.' " (*Id*. at p. 673.) Still, we observed that landowners may be liable for injuries to persons resulting from an obvious hazard where " ' "the practical necessity of encountering the danger, when weighed against the apparent risk involved, is such that under the circumstances, a person might choose to encounter the danger." ' " (*Ibid*., quoting *Krongos v. Pacific Gas & Electric Co*. (1992) 7 Cal.App.4th 387, 391, 394 [owner of a construction yard could be liable to an employee of the yard's lessor for injuries resulting from an obvious hazardous power line].) This rule is consistent with the Restatement Second and Restatement Third of Torts. (Rest.2d Torts, § 343A [a landowner is generally not liable for injuries resulting from a "known or obvious" hazard, "unless the [landowner] should anticipate the harm despite such knowledge or obviousness"]; Rest.3d Torts, Liability for Physical and Emotional Harm, § 51, com. k, p. 251 [same].)

We did not determine in *Kinsman* whether or under what circumstances the above rule — which is set forth in section

343A of the Restatement Second of Torts (titled "Known or Obvious Dangers") — might apply to independent contractors. Instead, our rule in *Kinsman* applies only to situations in which an independent contractor could not be reasonably expected to ascertain or discover a hidden danger, a circumstance not at issue here. (*Kinsman*, *supra*, 37 Cal.4th at p. 673.) We did, however, squarely address the related section 343 of the Restatement Second of Torts (titled "Dangerous Conditions Known to or Discoverable by Possessor"). We observed that this section "must be modified, after *Privette*" as applied "to a hirer's duty to the employees of independent contractors." (*Kinsman*, at p. 674.) Section 343 provides that a landowner is liable for a hazard on the premises when it " '(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and [¶] (b) should expect that they will not discover or realize the danger, *or will fail to protect themselves against it.*' " (*Kinsman*, at p. 674, quoting Rest.2d Torts, § 343, italics added by *Kinsman*.) We explained that the italicized phrase does not apply to independent contractors because, once the contractor becomes aware of a concealed hazard's existence, it becomes the contractor's responsibility to take whatever precautions are necessary to protect itself and its workers from the hazard. (*Kinsman*, at p. 674.)

Despite the above reasoning, we speculated in dicta in *Kinsman* that, even as to independent contractors, "[t]here may be situations . . . in which an obvious hazard, for which no warning is necessary, nonetheless gives rise to a duty on a landowner's part to remedy the hazard because knowledge of the hazard is inadequate to prevent injury." (*Kinsman*, *supra*, 37 Cal.4th at p. 673.) We further observed that, "when there is a

11

known safety hazard on a hirer's premises that can be addressed through reasonable safety precautions on the part of the independent contractor, a corollary of *Privette* and its progeny is that the hirer generally delegates the responsibility to take such precautions to the contractor . . . ." (*Kinsman*, at p. 673.) The Court of Appeal relied on this discussion to create a third exception to the *Privette* doctrine: Where there were no reasonable safety precautions the independent contractor could have taken to avoid or protect against a known hazard, the landowner may be liable. (*Gonzalez, supra,* 20 Cal.App.5th at pp. 272–273.) But, as the Court of Appeal acknowledged, we did not set out to resolve in *Kinsman* whether or under what circumstances a landowner may be liable to an independent contractor or its workers for injuries resulting from known hazards on a premises; instead, we resolved only whether a landowner may be liable for concealed hazards on a premises. (*Kinsman, supra,* 37 Cal.4th at p. 664; see also *Gonzalez*, at p. 272, fn. 1.) And, we had no need to determine whether a landowner could be liable where *no* reasonable safety precautions exist that would protect an independent contractor or its workers from a known hazard on the premises, since the plaintiff in *Kinsman* acknowledged that "reasonable safety precautions against the hazard . . . were readily available . . . ." (*Kinsman*, at p. 664; see also *B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11 [" ' "[C]ases are not authority for propositions not considered" ' "].) We resolve this question below.

## C. Delegation of a Landowner's Duties Regarding Known Hazards under *Privette*

This case compels us to answer a simple but important question: If there is a known hazard on a property that the independent contractor cannot remedy or protect against

through the adoption of reasonable safety precautions, and the contractor or one of its workers is injured after proceeding to do the work anyway, is the landowner liable to the contractor in tort? We conclude that, pursuant to *Privette*'s strong presumption that a hirer delegates to an independent contractor all responsibility for workplace safety, a landowner owes no duty to the contractor or its workers to remedy a known hazard on the premises or take other measures that might provide protection against the hazard. *Privette*'s "no duty" rule applies even where the contractor is unable to minimize or avoid the danger through the adoption of reasonable safety precautions. A landowner does not fail to delegate responsibility to the contractor for workplace safety simply because there exists a known hazard on the premises that cannot be readily addressed by the contractor. Were we to hold otherwise, we would vastly expand hirer liability and create considerable tension with decades of case law establishing that a hirer is not liable where it is merely aware of a hazardous condition or practice on the worksite.

Further analysis of our reasoning in *Kinsman*, *Hooker*, and *SeaBright* make this conclusion clear. As we recognized in *Kinsman*, applying to independent contractors the Restatement's rule that a landowner may be liable where it " 'should expect' " that a visitor " 'will fail to protect themselves against' " a known hazard on the premises would be inconsistent with *Privette*'s presumption of delegation. (*Kinsman*, *supra*, 37 Cal.4th at p. 674, quoting Rest.2d Torts, § 343.) Once an independent contractor becomes aware of a hazard on the premises, "the landowner/hirer delegates the responsibility of employee safety to the contractor" and "a hirer has no duty to act to protect the employee when the contractor fails in that

task . . . ." (*Kinsman*, at p. 674.)  A rule establishing landowner liability for a known hazard where there were no reasonable safety precautions the contractor could have adopted to protect against the hazard would turn *Privette*'s presumption of delegation on its head by requiring the landowner to affirmatively assess workplace safety.  The landowner would need to determine whether the contractor is able to adopt reasonable safety precautions to protect against the known hazard and, if not, to remedy the hazard.  This makes little sense given that a landowner typically hires an independent contractor precisely because of the contractor's expertise in the contracted-for work and the hirer usually has no right to interfere with the contractor's decisions regarding safety or otherwise control the contractor's work.  (*Privette, supra*, 5 Cal.4th at pp. 693, 700; see also *Torres v. Reardon* (1992) 3 Cal.App.4th 831, 840 [As between the hirer and the contractor, "the contractor better understands the nature of the work and is better able to recognize risks peculiar to it"]; Rest.3d Torts, Physical and Emotional Harm, § 57, com. c, p. 402 ["[H]irers of independent contractors have less knowledge than employers about the safety-related details and methods of the work"].)  Our conclusion in *Kinsman* that a landowner delegates all responsibility to independent contractors to " 'protect themselves against' " a known hazard (*Kinsman*, at p. 674, italics omitted), coupled with the principles underlying *Privette*'s straightforward rule that a hirer of an independent contractor delegates to the contractor all responsibility for workplace safety (see *Privette*, at p. 693; *SeaBright, supra*, 52 Cal.4th at p. 597), leads us to reject a rule that would allow a contractor to recover in tort so long as it proves it was unable to

adopt reasonable safety precautions in the face of a known hazard.

In addition, a rule that would expose a landowner to tort liability whenever an independent contractor is unable to adopt reasonable safety precautions to protect against a known danger would create tension with our holding in *Hooker* by providing an avenue for liability premised upon a hirer's failure to correct an unsafe work condition. In *Hooker*, we held that a hirer is not liable under *Privette* where it merely permits a dangerous work condition or practice to exist. (*Hooker*, *supra*, 27 Cal.4th at pp. 215.) This is true even where the hirer knows of the danger and has the authority and ability to remedy it. The facts of *Hooker* make this clear: The hirer in *Hooker* had the authority to prevent traffic on an overpass the independent contractor was constructing. (*Id.* at p. 214.) The hirer also knew that, to allow traffic to pass through, the contractor's crane operator was *required* to (i.e., had no other option other than to) engage in the unsafe practice of retracting the crane's stabilizing outriggers. (*Ibid*.) Despite the hirer's knowledge of the unsafe practice, we held that the hirer was not liable for failing to take affirmative steps within its authority to remedy it. (*Id.* at pp. 214–215.)

In the nearly two decades following our opinion in *Hooker*, courts have consistently reaffirmed that "[a] hirer's failure to correct an unsafe condition" is insufficient, by itself, to establish liability under *Hooker*'s exception to the *Privette* doctrine. (*Khosh v. Staples Construction Co., Inc.* (2016) 4 Cal.App.5th 712, 718; see also *Tverberg v. Fillner Construction, Inc.* (2012) 202 Cal.App.4th 1439, 1446 (*Tverberg II*) ["[P]assively permitting an unsafe condition to occur . . . does not constitute affirmative contribution"].) To be liable, a hirer must instead exercise its retained control over any part of the contracted-for

work — such as by directing the manner or methods in which the contractor performs the work; interfering with the contractor's decisions regarding the appropriate safety measures to adopt; requesting the contractor to use the hirer's own defective equipment in performing the work; contractually prohibiting the contractor from implementing a necessary safety precaution; or reneging on a promise to remedy a known hazard — in a manner that affirmatively contributes to the injury. (See *Hooker*, at pp. 212, fn. 3, 215; *McKown*, *supra*, 27 Cal.4th at p. 225; *Tverberg II*, at pp. 1446–1448; *Ruiz v. Herman Weissker, Inc.* (2005) 130 Cal.App.4th 52, 65–66; *Ray v. Silverado Constructors* (2002) 98 Cal.App.4th 1132–1134 (*Ray*).)

We recognize that *Hooker* was based upon a retained control theory of liability (which applies to all hirers), whereas this action is based upon a premises liability theory (which would apply to only landowner hirers). Nevertheless, a rule that exposes a landowner to liability whenever there are no safety precautions available to protect an independent contractor or its workers against a known hazard would, in practice, swallow the rule we set forth in *Hooker*, at least as applied to landowners, because it would expose the landowner to liability even in situations in which it did not interfere with or exert control over any part of the contractor's work, such as the contractor's decisions regarding workplace safety. Indeed, it would give rise to a "Catch-22" situation: A landowner could avoid liability under *Hooker* by declining to interfere with the contractor's decisions regarding whether or how it might safely perform the work in view of a hazard on the worksite, only to be potentially liable under the Court of Appeal's rule for not exercising control over the contractor's work by attempting to remedy or provide protections against that hazard.

Finally, our conclusion is consistent with our holding in *SeaBright*. In *SeaBright*, we addressed whether a hirer could be liable where an employee of an independent contractor hired to maintain and repair a luggage conveyor belt was injured because the conveyor belt lacked the safety guards required by Cal-OSHA regulations. (*SeaBright*, *supra*, 52 Cal.4th at pp. 594–595.) In answering "no" to this question, we explained that even though the hirer's regulatory duty to install the safety guards preexisted the contract, the hirer delegated to the independent contractor "any tort law duty it owe[d] to the contractor's employees to ensure the safety of the specific workplace that is the subject of the contract." (*Id.* at p. 594, italics omitted; see also *id.* at pp. 601, 603.) The Court of Appeal's proposed third exception to *Privette* would subject a landowner to liability for failing to remedy a known hazard on the premises, even though a hirer who fails to comply with clearly defined statutory and regulatory workplace safety requirements — and thereby creates an unsafe condition on the worksite — is not liable for such injuries under *SeaBright*.

Following our holdings in *Hooker* and *SeaBright*, several Court of Appeal decisions have found no hirer liability in circumstances strikingly similar to those presented here. In *Delgadillo v. Television Center, Inc.* (2018) 20 Cal.App.5th 1078, an employee of an independent contractor fell to his death while he was washing a commercial building's windows when his descent apparatus detached from the roof. (*Id.* at p. 1081.) The plaintiffs submitted evidence that (1) the building's owners had a statutory and regulatory duty to provide approved anchor points on the roof to support window washers; (2) the building contained no such anchor points; and (3) without the anchor points, there was no safe way to clean the windows. (*Id.* at pp.

1083–1084.) The court nevertheless determined that the landowners owed no duty because, under our holding in *SeaBright*, they delegated to the contractor the duty to comply with all statutory and regulatory requirements necessary to provide a safe workplace. (*Delgadillo*, at p. 1091.) The court also found that the owners did not exercise retained control over the contractor's work in a manner that affirmatively contributed to the injury because, while the building had inadequate anchor points, the owners did not "suggest or request" that the contractor use them in cleaning the windows. (*Id.* at p. 1093.) Like *SeaBright*, *Delgadillo* illustrates that even where an unsafe condition exists on the premises due to the landowner's failure to comply with specific statutory and regulatory duties, the landowner is not liable because it is the contractor who is responsible for its own workers' safety.

Similarly, in *Madden v. Summit View, Inc.* (2008) 165 Cal.App.4th 1267, the court applied our holding in *Hooker* to find that the hirer (a general contractor) was not liable for injuries suffered by an employee of an independent contractor who fell from a raised patio during construction of a residential home. (*Madden*, at pp. 1271, 1276–1278.) The plaintiff claimed the hirer was negligent for failing to install protective railing along the open side of the patio. (*Id.* at pp. 1270–1271.) The court held that this was insufficient to amount to affirmative contribution. (*Id.* at pp. 1276–1278.) The court explained that, while the plaintiff alleged that its employer (the independent contractor) had no authority to install protective railing, there was no evidence that the hirer "participated in any discussion about placing a safety railing along the patio, became aware of any safety concern due to the lack of such a railing, or intervened in any way to prevent such a railing from being erected." (*Id.* at

p. 1277.)  In other words, there was no evidence that the hirer "*directed* that no guardrailing or other protection against falls be placed along the raised patio, or that it acted in any way to *prevent* such a railing from being installed."  (*Id.* at pp. 1276–1277.)

Finally, in *Brannan v. Lathrop Construction Associates, Inc.* (2012) 206 Cal.App.4th 1170 (*Brannan*), an employee of an independent contractor fell off a wet plastic scaffold that he believed was the only means of access to the area in which he was working.  (*Id.* at p. 1174.)  The contractor had the authority to stop the work due to a safety concern but did not have any authority to remove the scaffold.  (*Id.* at pp. 1174, 1178.)  The court held that the hirer was not liable for the employee's injuries because there was no indication that it exercised any retained control over the contractor's work in a manner that affirmatively contributed to the injury.  (*Id.* at pp. 1179–1180.)  The court reasoned that even if the presence of the scaffold required the plaintiff to climb over it to perform his work, the hirer never directed the plaintiff to climb over the scaffold.  (*Id.* at pp. 1178–1179.)  The court further noted that the contractor did not ask the hirer to remove the scaffolding for safety reasons, nor did the hirer promise to do so.  (*Id.* at p. 1180.)

The above cases illustrate how the Court of Appeal's rule would subject landowners, but not general contractors or other hirers, to potential tort liability under an identical set of factual circumstances.  All of our *Privette* line of cases, aside from *Kinsman*, considered "whether an employee of an independent contractor may sue the hirer of the contractor under tort theories covered in chapter 15 of the Restatement Second of Torts."  (*Hooker*, *supra*, 27 Cal.4th at p. 200.)  That chapter covers the circumstances under which any hirer (whether a

landowner or other hirer) may be liable for injuries sustained to third persons due to the work of an independent contractor. *Kinsman*, on the other hand, considered whether a landowner (but not a general contractor or subcontractor) may be liable for injuries sustained by an independent contractor's workers under the premises liability tort theories covered by chapter 13 of the Restatement Second of Torts. (See *Kinsman*, *supra*, 37 Cal.4th at p. 673.) Thus, the *Kinsman* rule applied only to landowners (which we clarified in *Kinsman* also includes land possessors), and not to nonlandowner hirers.

If we were to adopt the Court of Appeal's rule regarding known hazards, which is based on the premises liability rules discussed in *Kinsman* and thus applies exclusively to landowner hirers, we would be holding landowners liable for known dangerous conditions on the worksite even though nonlandowner hirers would not be liable under the same circumstances. To illustrate this discord, the landowners in *Delgadillo* would be liable because they owned a building that had an unsafe but known condition on the roof (i.e., the lack of statutorily required anchor points) and there were no reasonable safety precautions the window washers could have implemented in order to avoid the hazard and clean the windows safely. This liability would attach even though the landowner did not exercise any retained control over the contracted-for work in a manner that affirmatively contributed to the injury. But the general contractors in *Brannon* and *Madden* would not be liable because they did not own the premises and also did not exercise any retained control over the contracted-for work in a manner that affirmatively contributed to the injury.

Tort law sometimes imposes heightened duties on landowners, including a duty to remedy obvious hazards on

their property in certain circumstances.  Nonetheless, we can think of no compelling reason for making the *Privette* doctrine largely inapplicable to landowner hirers such that they are unable to delegate the duty to maintain a safe workplace to an independent contractor.  Indeed, it would be contrary to *Privette*'s strong presumption that *all* hirers delegate responsibility for workplace safety to independent contractors if we created two disparate rules under which landowners would be liable for known hazards on the worksite in certain circumstances while other nonlandowner hirers would not be liable for such hazards under the same circumstances.  If anything, a landowner — perhaps especially a residential homeowner — will normally be less likely than a general contractor to have knowledge regarding the "methods used and requirements of the work being performed" by an independent contractor (*Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253, 268 (*Toland*)) and is, therefore, less likely to understand whether and what safety precautions are available to protect the contractor's workers from a known hazard on the premises.  It made sense for us to adopt a rule in *Kinsman* that holds landowners accountable for concealed hazards on their property of which they should reasonably be aware and the independent contractor is unlikely to discover because the landowner is the only party with knowledge of the danger and cannot effectively delegate responsibility for workplace safety without alerting the contractor to the danger. (*Kinsman*, *supra*, 37 Cal.4th at p. 677; see also *id.* at p. 679.)  This rationale does not apply where the hazard is open and obvious, as in this case.  Moreover, we stopped short in *Kinsman* of imposing a duty on the landowner to remedy the concealed hazard or to provide the contractor with safety precautions that would protect it against

the hazard, recognizing that it is the contractor's duty to implement whatever precautions are necessary to protect its workers against the hazard once warned of it. (See *id.* at pp. 673–674.) Stated differently, once the hazard is known to the contractor, the contractor has at its disposal all of the information necessary to determine whether or how the work can be performed safely. We therefore decline to adopt a rule that subjects landowners to greater liability than other hirers for injuries stemming from known hazards.

Furthermore, it would be difficult, if not impossible, for a landowner to ever obtain summary judgment were we to adopt a rule that subjects landowners to potential liability where there are no reasonable safety precautions available to protect against a known danger. (Cf. *Toland, supra,* 18 Cal.4th at p. 268 [rejecting a rule that would impose liability based on a hirer's " 'superior knowledge' " of the " 'risk[s]' " of the work because the rule would not be amenable to summary judgment]; see also *id.* at pp. 275–276 (conc. & dis. opn. of Werdegar, J.).) The question of whether the independent contractor, in hindsight, could have adopted reasonable safety precautions to protect against a known hazard will almost always encompass disputed issues of material fact. (See *Gonzalez, supra,* 20 Cal.App.5th at pp. 273–274 [recognizing that the reasonableness of a party's actions in confronting a known hazard or taking precautions to protect against the hazard "is generally a question of fact for the jury to decide"].) If a plaintiff were able to survive summary judgment merely by alleging there were no reasonable safety precautions available, *Privette's* presumption of delegation would be rebuttable in nearly all instances, which would effectively amount to no presumption at all.

We acknowledge that there will sometimes be financial and other real world factors that might make it difficult for an independent contractor to raise safety concerns with the hirer or to simply walk away from a job it has deemed to be unsafe. But independent contractors can typically factor the cost of added safety precautions or any increased safety risks into the contract price. (*Privette, supra,* 5 Cal.4th at p. 693.) They can also purchase workers' compensation to cover any injuries sustained while on the job. (*Id.* at pp. 698–700.)[1] Furthermore, our holding avoids the unfair "tort damages windfall" that would result from adopting a rule that allows independent contractors and their workers to obtain tort damages from the landowner while the landowner's own employees are limited to workers' compensation. (*SeaBright, supra,* 52 Cal.4th at p. 599; see also *Privette,* at p. 700.) Were we to adopt the Court of Appeal's rule — which applies only to injuries suffered by independent contractors and their employees — we would allow contractors and their employees to obtain tort damages from the landowner when injured as a result of a known hazard on the premises. Conversely, those persons who were directly employed by the landowner would be limited to workers' compensation for any injuries sustained while on the premises. To impose tort liability "on a person who hires an independent contractor for specialized work would penalize those individuals who hire

---

[1] That Gonzalez himself did not have workers' compensation insurance does not change our analysis. Gonzalez was legally required to obtain workers' compensation coverage for his employees (Lab. Code, § 3700) and he had the option of obtaining coverage for himself (Ins. Code, § 11846). Moreover, the "presence or absence of workers' compensation coverage" is not key to determining whether *Privette* should apply. (*Tverberg, supra,* 49 Cal.4th at p. 522.)

experts to perform dangerous work rather than assigning such activity to their own inexperienced employees." (*Privette*, at p. 700.)

Gonzalez argues that the *Privette* doctrine applies only where the independent contractor is specifically tasked with repairing the hazard or where the hazard was created by the work for which the contractor was retained. Only then, in Gonzalez's view, is the risk inherent to the work the contractor was hired to perform. Gonzalez's argument goes well beyond the rule adopted by the Court of Appeal and fails on its merits for at least two reasons. First, Gonzalez's view of the risk inherent to his work is overly narrow: It cannot be seriously disputed that cleaning a skylight will always entail at least some risk of falling off a roof. Second, Gonzalez's position is contrary to our holdings in *Tverberg* and *Kinsman*. We recognized in *Tverberg* that the bollard holes that caused the independent contractor's injury were wholly unrelated to his task of constructing a metal canopy. (*Tverberg, supra*, 49 Cal.4th at p. 523 ["The bollards had no connection to the building of the metal canopy, and [the independent contractor] had never before seen bollard holes at a canopy installation"].) The contractor also did not create the hazard; the holes were dug by a different subcontractor for a different purpose. (*Id.* at p. 522.) Nevertheless, we determined that the doctrine of peculiar risk does not apply when an independent contractor "seeks to hold the general contractor vicariously liable for injuries arising from risks inherent in the nature *or the location* of the hired work over which the independent contractor has, through the chain of delegation, been granted control." (*Id.* at pp. 528–529, italics added.) Since the proximity of the bollard holes to the location where the canopy was to be constructed made "the

possibility of falling into one of those holes . . . an inherent risk of" the contractor's work, the contractor — and not the hirer — was responsible for protecting himself against that risk. (*Id.* at p. 529.) Similarly, in *Kinsman*, the independent contractor was hired to install scaffolding and not to remove or remediate the asbestos hazard. (*Kinsman*, *supra*, 37 Cal.4th at p. 664.) The plaintiff's exposure to asbestos was also not caused by his work; instead, the work of other contractors generated asbestos dust and debris to which the plaintiff was exposed. (*Ibid.*) We did not hold that the landowner in *Kinsman* could be liable because the hazard was not inherent to the contractor's work. Instead, we held that the landowner could be liable if the asbestos hazard was unknown to and undiscoverable by the contractor and the landowner failed to warn of it, irrespective of the fact that the contractor did not create the hazard and was not hired to remediate the hazard. (*Id.* at pp. 675, 683.) As these and our other *Privette* cases make clear, a hirer presumptively delegates to an independent contractor all responsibility for workplace safety, such that the hirer is not responsible for any injury resulting from a known unsafe condition at the worksite — regardless of whether the contractor was specifically tasked with repairing the unsafe condition and regardless of whether the danger was created by the work for which the contractor was retained.

Gonzalez additionally argues that delegation under *Privette* "is essentially a form of primary assumption of risk" and that, pursuant to the principles governing the primary assumption of risk doctrine, Mathis had "an affirmative duty to not increase the risk above the level inherent in the activity." Relying on primary assumption of risk cases, Gonzalez argues that since Mathis increased the risk that he would fall off the

roof, Mathis must be held liable. Gonzalez is mistaken; the primary assumption of risk and *Privette* doctrines "are distinct." (*Gordon v. ARC Manufacturing, Inc.* (2019) 43 Cal.App.5th 705, 717.) The *Privette* doctrine is concerned with *who* owes a duty of care to ensure workplace safety — the hirer or the independent contractor — under principles of delegation. (See *SeaBright, supra,* 52 Cal.4th at pp. 599–600.) The assumption of risk doctrine asks *whether* a defendant owes a duty of care where the plaintiff voluntarily assumes the risks of a dangerous activity or occupation. (See *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003–1005.)

If the risks are inherent to the activity or occupation and cannot be mitigated without fundamentally altering the nature of the activity or occupation, primary assumption of risk applies and the defendant owes no duty of care. (See, e.g., *Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 163 [defendant owed no duty because being hit by a pitch, whether intentionally or not, is an inherent risk of baseball]; *Priebe v. Nelson* (2006) 39 Cal.4th 1112, 1132 [defendant owed no duty because kennel worker "assumed the risk of being bitten or otherwise injured by the dogs under her care and control"].) Secondary assumption of risk is essentially a form of comparative negligence under which a defendant owes a duty of care to the plaintiff, but the plaintiff bears some fault for voluntarily encountering a known risk. (*Gregory v. Cott* (2014) 59 Cal.4th 996, 1001.) If the strong presumption of delegation under *Privette* is overcome, assumption of risk and comparative fault principles may become relevant. (See *McKown, supra,* 27 Cal.4th at pp. 223, 226 [although the hirer was liable for affirmatively contributing to the injury, the jury allocated 55 percent of the fault to the independent contractor under

comparative negligence principles].) But these principles have no bearing on whether, in the first instance, Mathis delegated to Gonzalez a duty to ensure workplace safety under *Privette*. If Gonzalez's view were correct, then there would have been no need for us to articulate in *Hooker* that a hirer is liable only where it exercises retained control over any part of the independent contractor's work in a manner that affirmatively contributes to the injury. Instead, we would have simply held that a hirer is liable whenever it increases the risk of injury.

For these reasons, we conclude that a landowner will generally not be liable for an injury to an independent contractor or its workers resulting from a known hazard on the property. Of course, if there is evidence that the landowner exercised any retained control over any part of the contractor's work in a manner that affirmatively contributed to the injury, the landowner's actions would fall within the established *Hooker* exception to the *Privette* doctrine. But we decline to find a broad third exception to the *Privette* doctrine that would expose a landowner to liability for known hazards on the worksite where the independent contractor is unable to adopt reasonable safety precautions to protect against the hazard. Such a rule would be inconsistent with the strong presumption under *Privette* that a landowner delegates all responsibility for workplace safety to the independent contractor.

### D. Application to the Present Case

We now apply our holding to the facts of this case. Gonzalez contends that Mathis's roof was hazardous because the skylight could only be cleaned while walking along an unreasonably narrow path between the parapet wall and the roof's exposed edge and, due to Mathis's years-long failure to

maintain the roof, this path was slippery and covered in loose sand, gravel, and rocks. Gonzalez additionally argues that he was not hired to and lacked the expertise necessary to repair the roof or change the permanent fixtures on the roof such that he and his workers could clean the skylight safely. Thus, Gonzalez concludes, Mathis's duty to maintain the roof in a reasonably safe condition was never delegated to him. But while Mathis may not have delegated any duty to repair the roof or make other structural changes to it, Mathis did delegate to Gonzalez a duty to provide a safe workplace to his workers and to perform the work for which he was retained in a safe manner. This encompassed a duty on Gonzalez's part to assess whether he and his workers could clean the skylight safely despite the existence of the known hazardous conditions on the roof. It would be contrary to the principles underlying *Privette* to hold that Mathis also had a duty to determine whether the work could be performed safely absent remediation of a known hazard. Landowners, like Mathis, hire independent contractors precisely because of their expertise in the contracted-for work. This expertise puts contractors in a better position to determine whether they can protect their workers against a known hazard on the worksite and whether the work can be performed safely despite the hazard.

We emphasize that our holding applies only to hazards on the premises of which the independent contractor is aware or should reasonably detect. (See *Kinsman, supra,* 37 Cal.4th at p. 675.) Although we recognized in *Kinsman* that the delegation of responsibility for workplace safety to independent contractors may include a limited duty to inspect the premises (*id.* at p. 677), it would not be reasonable to expect Gonzalez to identify every conceivable dangerous condition on the roof given that he is not

a licensed roofer and was not hired to repair the roof (see *id.* at pp. 677–678). Here, however, it is undisputed that Gonzalez was aware of the roof's dangerous conditions. Consequently, Gonzalez had a duty to determine whether he and his workers would be able to clean the skylight safely despite the known dangerous conditions.

We also do not address whether and under what circumstances a landowner might be liable to an independent contractor or its workers who are injured as a result of a known hazard on the premises that is not located on or near the worksite. (See *Kinsman, supra*, 37 Cal.4th at p. 674, fn. 2.) Gonzalez argues that the path between the parapet wall and the edge of the roof was just a means to access the worksite, as opposed to being a part of the worksite, but this is belied by the undisputed evidence in the record. The path ran parallel to the skylight and Gonzalez testified that he utilized it *while* cleaning the skylight. Moreover, even if it were true that Gonzalez was required to traverse the path just to get to the skylight, it still would have constituted an inherent risk in the job for which he was hired. (See *Tverberg, supra*, 49 Cal.4th at p. 529 ["Because the bollard holes were located next to the area where Tverberg was to erect the metal canopy, the possibility of falling into one of those holes constituted an inherent risk of the canopy work"].) We do not resolve whether Mathis might have been liable under circumstances not presented on these facts, such as if the hazard had been located nowhere near the skylight and had been wholly unconnected to Gonzalez's work in cleaning the skylight.

Gonzalez alternatively argues that, even if we decline to adopt the Court of Appeal's rule, Mathis should still be held liable under the well-established *Hooker* exception to *Privette*. First, he claims that Mathis retained sole authority to hire a

professional roofer to repair the roof and exercised that authority in a manner that affirmatively contributed to his injury by failing to do so. We made clear in *Hooker*, however, that a hirer does not exercise any retained control over the contractor's work in a manner that affirmatively contributes to the contractor's injury by merely permitting or failing to correct an unsafe work condition. (*Hooker*, *supra*, 27 Cal.4th at pp. 214–215; see also *Padilla v. Pomona College* (2008) 166 Cal.App.4th 661, 667, 671 [hirer's sole ability to depressurize the pipes that caused the plaintiff's injury did not amount to an exercise of retained control in a manner that affirmatively contributed to the injury].) Although Gonzalez testified that he informed Mathis's housekeeper and accountant that the roof was in poor condition and should be repaired, neither Mathis nor any of his staff promised, expressly or implicitly, to repair the roof. (See *Hooker*, at p. 212, fn. 3 ["[I]f the hirer promises to undertake a particular safety measure, then the hirer's negligent failure to do so should result in liability if such negligence leads to an employee injury"]; *Tverberg II*, *supra*, 202 Cal.App.4th at p. 1448 [triable issue as to whether hirer's statement that it did not currently have the materials needed to cover the bollard holes amounted to an implicit promise to cover the bollard holes once such materials were obtained]; *Brannan*, *supra*, 206 Cal.App.4th at p. 1180 [case would have been decided differently had the hirer promised to remove the wet scaffolding].) They also did not prohibit or dissuade Gonzalez from implementing any particular safety measure or from requesting repairs as a condition of continuing the work. (See *Ray*, *supra*, 98 Cal.App.4th at pp. 1134, 1137 [hirer contractually prohibited independent contractor from implementing the one safety precaution that would have saved the worker's life].)

We do not decide whether there may be situations, not presented here, in which a hirer's *response* to a contractor's notification that the work cannot be performed safely due to hazardous conditions on the worksite might give rise to liability. For example, we do not decide whether a hirer's conduct that unduly coerces or pressures a contractor to continue the work even after being notified that the work could not be performed safely due to a premises hazard would fall under the *Hooker* exception to *Privette*. We decide only that neither Mathis nor any member of his staff exercised any retained control over Gonzalez's work in a manner that affirmatively contributed to Gonzalez's injury simply by being made aware that the roof was slippery and needed repair.

Second, Gonzalez argues that Mathis exercised his retained control over the work in a manner that affirmatively contributed to Gonzalez's injury when Mathis's housekeeper directed Gonzalez to go on to the roof on the day of the accident to tell his workers to use less water in cleaning the skylight. However, the general direction to "go on to the roof" did not interfere with or otherwise impact Gonzalez's decisions regarding how to safely perform the work or provide a safe workplace for his employees. Mathis's housekeeper did not, for example, direct Gonzalez to walk between the parapet wall and the roof's edge or otherwise influence his decisions regarding whether and how he might safely cross over the roof in order to reach his workers. And, although Mathis's housekeeper did exert some control over how Gonzalez conducted his work by directing him to "use less water," Gonzalez does not contend that the use of less water was in any way causally connected to his injury. Gonzalez instead contends that he was injured because the configuration of the roof required him to walk between the

parapet wall and the roof's exposed edge, and the roof's dilapidated condition made its surface very slippery. Thus, the housekeeper's instruction did not amount to an exercise of retained control over any part of the work in a manner that affirmatively contributed to Gonzalez's injury.

In sum, pursuant to *Privette*, Mathis delegated all responsibility for workplace safety to Gonzalez. This delegation included a responsibility on Gonzalez's part to ensure that he and his workers would be able to clean the skylight safely despite the known dangerous conditions on the roof which increased the risk of falling. Mathis is not liable under our well-established precedent because he did not exercise any retained control over any part of Gonzalez's work in a manner that affirmatively contributed to Gonzalez's injury.

## III. DISPOSITION

We conclude that, under *Privette*, a landowner presumptively delegates to an independent contractor all responsibility for workplace safety, including the responsibility to ensure that the work can be performed safely despite a known hazard on the worksite. For this reason, a landowner will generally owe no duty to an independent contractor or its workers to remedy or adopt other measures to protect them against known hazards on the premises. Though a landowner may, nevertheless, be liable for a known hazard on the premises if it exercises its retained control over any part of the independent contractor's work in a manner that affirmatively contributes to the injury, Gonzalez failed to present any evidence tending to show that such circumstances existed in this case. We therefore reverse the judgment of the Court of Appeal

and remand to the Court of Appeal with instructions to affirm the trial court's judgment.

**GROBAN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**JENKINS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Gonzalez v. Mathis

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 20 Cal.App.5th 257
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S247677
**Date Filed:** August 19, 2021

---

**Court:** Superior
**County:** Los Angeles
**Judge:** Gerald Rosenberg

---

**Counsel:**

Evan D. Marshall; Law Offices of Wayne McClean, Wayne McClean; Panish Shea & Boyle, Brian J. Panish and Spencer R. Lucas for Plaintiff and Appellant.

Arbogast Law, David M. Arbogast; The Bronson Firm and Steven M. Bronson for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Latham & Watkins, Marvin S. Putnam, Jessica Stebbins, Robert J. Ellison and Michael E. Bern for Defendants and Respondents.

Fred J. Hiestand for the Civil Justice Association of California as Amicus Curiae on behalf of Defendants and Respondents.

June Babiracki Barlow and Neil Kalin for California Association of Realtors as Amicus Curiae on behalf of Defendants and Respondents.

Newmeyer & Dillion, Alan H. Packer and Jack R. Rubin for California Building Industry Association as Amicus Curiae on behalf of Defendants and Respondents.

Greines, Martin, Stein & Richland, Edward L. Xanders and Eleanor S. Ruth for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendants and Respondents.

LeClairRyan and William A. Bogdan for Associated General Contractors of California as Amicus Curiae on behalf of Defendants and Respondents.

Horvitz & Levy, Stephen E. Norris and Joshua C. McDaniel for American Property Casualty Insurance Association and Chamber of Commerce of the United States of America as Amici Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Evan D. Marshall
11400 West Olympic Boulevard, Suite 1150
Los Angeles, CA 90064
(310) 458-6660

Michael E. Bern
Latham & Watkins LLP
555 11th Street NW
Washington, DC 20004
(202) 637-1021