Filed 11/10/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| FRANCISCO RAMIREZ et al.,<br>     Plaintiffs and Appellants,<br>v.<br>PK I PLAZA 580 SC LP et al.,<br>     Defendants and Respondents. | A162593<br><br>(Alameda County<br>Super. Ct. No. RG19002904) |

Francisco Ramirez, a self-employed contractor, was hired by a shopping center's tenant to remove an exterior sign after the tenant vacated its space. While searching for the sign's electrical box, he entered a cupola on the shopping center's roof and fell through an opening built into the cupola's floor, sustaining serious injuries.

Ramirez and his wife (collectively, plaintiffs) filed a tort action against defendants Kimco Realty Corporation and its subsidiary, PK 1 Plaza 580 SC, LP (collectively, Kimco), who own and operate the shopping center. The trial court granted summary judgment in Kimco's favor based on the *Privette* doctrine, which creates "a strong presumption under California law that a hirer of an independent contractor delegates to the contractor all responsibility for workplace safety[,] . . . mean[ing] that a hirer is typically not liable for injuries sustained by an independent contractor or its workers while on the job." (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 37–38 (*Gonzalez*), citing *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*).)

1

On appeal, plaintiffs contend that summary judgment was improperly granted because the *Privette* doctrine does not apply. We agree. Kimco did not hire its tenant or Ramirez to perform the work. Thus, Kimco did not delegate its own responsibility for the roof's condition to Ramirez through an employment relationship, as contemplated by *Privette*. Nor did Kimco delegate such responsibility by virtue of its landlord-tenant relationship. Since Kimco neither sought summary judgment nor argues for affirmance on any basis other than the *Privette* doctrine, we must reverse and remand for further proceedings. In doing so, however, we recognize the strong possibility that Kimco will prevail under general principles of premises liability.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Kimco owns a Livermore shopping center. Freeway Insurance Services, Inc. (Freeway) leased an office suite in the center from Kimco. In October 2017, Freeway vacated the suite. Under the lease, Freeway thus became responsible for removing an exterior sign from the suite. Kimco offered to handle the removal and bill the cost to Freeway, but Freeway elected to hire Ramirez, a self-employed contractor, to perform the work.

On the afternoon of November 6, 2017, Ramirez arrived at Freeway's suite to remove the sign. Although Kimco had arranged for someone to be present to let Ramirez inside, no one was there when he arrived. While waiting to access the suite, he confirmed that the sign was powered by a low voltage electrical source that needed to be disconnected before he could complete the job.

In his deposition, Ramirez testified that after he waited outside for 20 minutes, a woman from Kimco's office arrived and gave him the keys to

2

Freeway's suite.[1] He asked her if a security guard or maintenance worker was onsite, since they usually had "all the keys including for the attic access." The woman responded that she did not know anything about it, asked him to call her half an hour before he finished the job, and left. Ramirez denied telling the woman he might need to go onto the roof, and it is undisputed that Kimco did not provide any directions to him about how to perform his job.

Once inside the suite, Ramirez searched for the electrical box, which would usually be in the suspended ceiling behind the sign. Not finding the box there, he decided to look for it on the roof.[2] He went to the rear of the building and used his own ladder to climb onto the roof.

On the roof, Ramirez saw a cupola that had an unlocked and open access door. Believing the electrical box might be in the cupola, he fully opened the access door and used a flashlight to look inside. He saw a "big opening" in the drywall where he thought the electrical box might be.

Ramirez climbed into the cupola through the access door. Nine feet from the access door, the cupola's floor "transitions to an opening with [two foot by six foot] joists," which are two feet apart from each other.[3] After travelling 12 feet into the cupola, Ramirez fell through the opening and the

----

[1] Kimco disputed that any of its representatives gave Ramirez the keys in person, pointing to email evidence that the code to a key lockbox was provided to him. The parties agreed this discrepancy was not material to the motion for summary judgment.

[2] As it turned out, the sign's electrical source was in a room on the building's ground floor.

[3] Kimco presented evidence that the cupola houses the fire sprinkler system and the opening is related to that system. Although implicitly conceding that the opening is related to the sprinkler system, plaintiffs disputed that the opening is necessary to the system's functioning or that it could not be made safer.

drywall of the ceiling below. He landed on the sidewalk, sustaining serious injuries.

Ramirez and his wife sued Kimco in January 2019. In the operative complaint, Ramirez brought causes of action for general negligence, premises liability, negligence per se, and negligent infliction of emotional distress. His wife also brought separate causes of action for negligent infliction of emotional distress, based on the allegation that she witnessed Ramirez's fall, and loss of consortium.

Kimco moved for summary judgment, claiming it did not owe a duty of care to plaintiffs. Kimco argued that the roof's "opening was neither a concealed condition nor . . . unascertainable to Ramirez," and its duty to "tak[e] proper precautions to protect against obvious hazards in the workplace . . . was delegated to [him] under the *Privette* doctrine." Plaintiffs responded that the *Privette* doctrine did not apply because, among other reasons, there was no employment relationship between Ramirez and Kimco.

The trial court granted Kimco's motion for summary judgment. The court concluded that Kimco "had no duty to ensure [Ramirez's] safety," because the *Privette* doctrine applied even though Kimco did not directly hire Ramirez. The court also found there was no triable issue of material fact as to whether an exception to the doctrine applied. Accordingly, it entered judgment in Kimco's favor in April 2021.

## II.
### DISCUSSION

#### A. *Standard of Review*

Summary judgment is properly granted if "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "A defendant seeking summary judgment must show that the plaintiff cannot establish at least one

4

element of the cause of action." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; see Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant meets this burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).)

On appeal, we independently review an order granting summary judgment, " ' " 'considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286.) "We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons. [Citation.] Even if the grounds entitling the moving party to a summary judgment were not asserted in the trial court, we must affirm if the parties have had an adequate opportunity to address those grounds on appeal." (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181.)

### B.    General Legal Standards

The existence of Kimco's legal duty to Ramirez is essential to all of plaintiffs' claims. "The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.) Claims of negligent infliction of emotional distress are generally premised not on a breach of a duty to avoid causing emotional distress but on the breach of some other duty that proximately causes

5

emotional distress. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 985.) Similarly, a spouse's claim for loss of consortium is premised on the success of the other spouse's claims against the defendant. (*Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1315–1316.) "[T]he existence and scope of a duty are questions of law." (*Staats v. Vintner's Golf Club, LLC* (2018) 25 Cal.App.5th 826, 832.)

        1.     A landowner's general duty of care

Civil Code section 1714 (section 1714) establishes this state's " 'basic policy . . . that [one] is responsible for an injury caused to another by [one's] want of ordinary care or skill in the management of [one's] property . . . . The proper test to be applied to the liability of the possessor of land in accordance with [the statute] is whether in the management of [one's] property [one] has acted as a reasonable [person] in view of the probability of injury to others.' " (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 672 (*Kinsman*).) "As a consequence of this general duty, those who own or occupy property have a duty to maintain their premises in a reasonably safe condition. [Citations.] To comply with this duty, a person who controls property must ' " ' "inspect [the premises] or take other proper means to ascertain their condition" ' " ' and, if a dangerous condition exists that would have been discovered by the exercise of reasonable care, has a duty to give adequate warning of or remedy it." (*Staats v. Vintner's Golf Club, LLC, supra*, 25 Cal.App.5th at p. 833, fn. omitted.)

In contrast, " 'if a danger is so obvious that a person could reasonably be expected to see it,' " then generally " 'the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the condition. [Citation.] However, this is not true in all cases. "[I]t is foreseeable that even an obvious danger may cause injury, if the practical

6

necessity of encountering the danger, when weighed against the apparent risk involved, is such that under the circumstances, a person might choose to encounter the danger." ' " (*Kinsman*, *supra*, 37 Cal.4th at p. 673.)

" '[I]n the absence of a statutory provision establishing an exception to the general rule of . . . section 1714, courts should create one only where "clearly supported by public policy." ' " (*Kesner v. Superior Court*, *supra*, 1 Cal.5th at p. 1143.)  Under *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*), the primary factors a court evaluates "[i]n determining whether policy considerations weigh in favor of such an exception . . . are 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Kesner*, at p. 1143, quoting *Rowland*, at p. 113.)

### 2.	The *Privette* doctrine

"At common law, a person who hired an independent contractor generally was not liable to third parties for injuries caused by the contractor's negligence in performing the work." (*Privette*, *supra*, 5 Cal.4th at p. 693; *Sandoval v. Qualcomm Incorporated* (2021) 12 Cal.5th 256, 269 (*Sandoval*).) This rule was based on the presumption that when one hires an independent contractor, one "delegates to the contractor the responsibility to do the work safely.  [Citations.]  This presumption is grounded in two major principles: first, that independent contractors by definition ordinarily control the manner of their own work; and second, that hirers typically hire independent

7

contractors precisely for their greater ability to perform the contracted work safely and successfully." (*Sandoval*, at p. 269.)

Over time, courts created several exceptions to the common law rule, including the peculiar risk doctrine. (*Privette*, *supra*, 5 Cal.4th at p. 693.) Under that doctrine, a landowner who hires an independent contractor "to do inherently dangerous work on the land" is liable to "innocent third parties injured by the negligence of [the] independent contractor" in performing that work. (*Id.* at pp. 694–695.) Thus, "liability imposed under the peculiar risk doctrine is *vicarious*, meaning that the liability of a person hiring a contractor to perform inherently dangerous work derives not from any negligence by the hirer but from the injury-causing negligence of the hired contractor." (*Tverberg v. Fillner Construction, Inc.* (2010) 49 Cal.4th 518, 525 (*Tverberg*).)

*Privette* declined to extend the peculiar risk doctrine to cover injured employees of an independent contractor performing inherently dangerous work. (*Tverberg*, *supra*, 49 Cal.4th at p. 525; *Privette*, *supra*, 5 Cal.4th at p. 702.) Thus, when an independent contractor or its employee is hurt on the job, the *Privette* doctrine limits the liability of the contractor's hirers, including landowner-hirers. (*Kinsman*, *supra*, 37 Cal.4th at p. 664.) The Supreme Court's initial rationale for limiting the liability of the hirer of an independent contractor was based on the availability of workers' compensation. The Supreme Court reasoned that "[b]ecause workers' compensation is the exclusive remedy for an employee's workplace injuries, thus barring recovery from the employer, so too an independent contractor's employee should not be allowed to recover damages from the contractor's hirer, who 'is indirectly paying for the cost of [workers' compensation]

coverage, which the [hired] contractor presumably has calculated into the contract price.' " (*Tverberg*, at p. 525, quoting *Privette*, at p. 699.)

Later, the Supreme Court "recast [its] primary rationale for the *Privette* doctrine in terms of delegation rather than workers' compensation." (*Sandoval, supra*, 12 Cal.5th at p. 270.) Since "the hirer presumptively delegates to the independent contractor the authority to determine the manner in which the work is to be performed, the contractor also assumes the responsibility to ensure that the worksite is safe, and the work is performed safely." (*Gonzalez, supra*, 12 Cal.5th at p. 41.) In addition, the doctrine "promotes workplace safety through 'clear rules about who's responsible for avoiding harms to workers when contractors are hired.' (*Sandoval*[,] . . . [at p.] 264.) Because of these types of considerations, [the Supreme Court] has 'endorsed a "strong policy" of presuming that a hirer delegates all control over the contracted work, and with it all concomitant tort duties, by entrusting work to a contractor.' " (*McCullar v. SMC Contracting, Inc.* (2022) 83 Cal.App.5th 1005, 1013, quoting *Sandoval*, at p. 270.)

Accordingly, in *Tverberg*, the Supreme Court held that the peculiar risk doctrine did not authorize an independent contractor hired by a subcontractor, who in turn had been hired by a general contractor, to "seek[] to hold the general contractor vicariously liable for [the independent contractor's] injuries arising from risks inherent in the nature or the location of the hired work over which the independent contractor ha[d], through the chain of delegation, been granted control." (*Tverberg, supra*, 49 Cal.4th at pp. 528–529.) Even though the "plaintiff independent contractor was not subject to mandatory workers' compensation coverage," the *Privette* doctrine barred him from suing the general contractor under a theory of vicarious

9

liability.[4]  (*Tverberg*, at p. 529; *Sandoval*, *supra*, 12 Cal.5th at pp. 270–271.)  Thus, the *Privette* doctrine applies if the injured party is the employee of an independent contractor or the independent contractor itself, so long as the duty to provide a safe workplace has been delegated to the contractor.  (See *Sandoval*, at p. 270, fn. 2; *Gonzalez*, *supra*, 12 Cal.5th at pp. 37–38.)

The *Privette* doctrine has two primary exceptions, under which a hirer may nonetheless be liable to an independent contractor or the contractor's employee because the "hirer has failed to effectively delegate all responsibility for workplace safety to the independent contractor."  (*Gonzalez*, *supra*, 12 Cal.5th at pp. 38, 42.)  First, under *Hooker*, "a hirer may be liable when it retains control over any part of the independent contractor's work and negligently exercises that retained control in a manner that affirmatively contributes to the worker's [or contractor's] injury."  (*Gonzalez*, at p. 38, citing *Hooker v. Department of Transportation*, *supra*, 27 Cal.4th at p. 202.)  Second, under *Kinsman*, "a landowner who hires an independent contractor may be liable if the landowner knew, or should have known, of a concealed hazard on the property that the contractor did not know of and could not have reasonably discovered, and the landowner failed to warn the contractor of the hazard."  (*Gonzalez*, at p. 38, citing *Kinsman*, *supra*, 37 Cal.4th at p. 664.)

---

[4] Although peculiar risk liability is essentially vicarious, not direct, "the distinction between the two sorts of liability" in this context is not "neat."  (*Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 205.)  Thus, the Supreme Court has extended the *Privette* doctrine to bar causes of action against hirers of independent contractors on liability theories that could be characterized as direct, such as negligent hiring.  (See *Hooker*, at pp. 201–202.)  At base, these theories are still derivative because the hired contractor, not the hirer, is " ' "the one primarily responsible for the worker's on-the-job injuries." ' "  (*Id.* at pp. 205–206.)

*C.     The* Privette *Doctrine Does Not Shield Kimco from Liability.*

Plaintiffs claim that "*Privette* is inapplicable" because it established "the general rule . . . that a non-negligent *hirer* cannot be held liable for injuries of an independent contractor," and there was no employment relationship between Ramirez and Kimco.  (Emphasis changed.)  We agree that the *Privette* doctrine does not apply, and summary judgment was therefore improperly granted.

### 1.     The scope of this opinion

Initially, we note that the only issue presented for our review is whether Kimco was entitled to summary judgment under the *Privette* doctrine.  Kimco has never claimed, below or on appeal, that it had no duty to Ramirez even if the doctrine is inapplicable.  We therefore do not decide whether summary judgment would have been proper under general principles of premises liability, including the *Rowland* factors.  (Cf. *Garrett v. Howmedica Osteonics Corp.*, *supra*, 214 Cal.App.4th at p. 181.)

Because we conclude that the *Privette* doctrine does not apply, we refrain from deciding plaintiffs' claim that the trial court erred by concluding that the cupola's opening was obvious.  In ruling that the *Kinsman* exception to the doctrine was inapplicable, the court stated that the opening was "not a 'concealed' hazard as defined in *Kinsman*" because it was "discoverable by a reasonable contractor using a flashlight to inspect where [the contractor was] going to walk in a dark enclosed cupola."  We do not view these statements as a standalone ruling that the opening was obvious under general principles of premises liability.  The court made the statements only after erroneously determining the *Privette* doctrine applied, and since the doctrine does *not* apply it was unnecessary to decide whether the standard discussed in

11

*Kinsman* was met.[5] Thus, the parties are not precluded from litigating on remand whether the danger was obvious. Nonetheless, we recognize there is strong evidence that it was, as the dissent's discussion of the *Kinsman* exception suggests, and the parties are also not precluded from litigating whether Kimco has other valid defenses that shield it from liability.

　　　　2.　　The *Privette* doctrine does not apply.

We now turn to the determinative issue, whether the *Privette* doctrine applies. As discussed above, *Privette* is grounded on the presumption that "the hirer [of an independent contractor] generally delegates to the contractor responsibility for supervising the job, including responsibility for looking after employee safety." (*Kinsman, supra*, 37 Cal.4th at pp. 670, 673.) In the premises-liability context, "[w]hen the hirer is also a landowner, part of that delegation includes taking proper precautions to protect against obvious hazards in the workplace" or against concealed hazards of which the independent contractor is or should be aware. (*Id.* at pp. 673–675, 677–678.) But here, Kimco did not hire either Ramirez or Freeway. Thus, Kimco did not delegate a responsibility for ensuring the worksite's safety, either directly or "through the chain of delegation." (*Tverberg, supra*, 49 Cal.4th at pp. 528–529.) Accordingly, the bedrock presumption of the *Privette* doctrine is absent in this case. (See *Sandoval, supra*, 12 Cal.5th at p. 269.)

Kimco argues that it nonetheless delegated to Freeway a duty involving the roof's condition by virtue of (1) their landlord-tenant relationship

---

[5] In any event, whether the hazard was not a concealed hazard because it was "discoverable by a reasonable contractor using a flashlight" does not necessarily determine whether the hazard was "so obvious that a person could reasonably be expected to see it" under general principles of premises liability. (*Kinsman, supra*, 37 Cal.4th at p. 673.)

12

generally and (2) the lease's particular terms making Freeway responsible for the sign's removal. We disagree.

> a. Kimco did not delegate to Freeway a duty involving the roof's condition merely by virtue of their landlord-tenant relationship.

Citing *Laico v. Chevron U.S.A., Inc.* (2004) 123 Cal.App.4th 649 (*Laico*), Kimco primarily claims, as it did below, that "a landowner/occupier implicitly delegates to its tenant the responsibility and duty to ensure that the tenant's employees are given a safe place to work." The trial court apparently accepted this argument, but we do not. *Laico* did not involve a landlord-tenant relationship, and the decision applied general principles of premises liability, not the *Privette* doctrine, to conclude that a landowner owed no duty to the plaintiffs.

One of the *Laico* plaintiffs worked for Chevron Research and Technology Company (CRTC), which operated "engine laboratory facilities" on property owned by defendant Chevron U.S.A., Inc. (Chevron). (*Laico*, *supra*, 123 Cal.App.4th at p. 654.) He was exposed to benzene while working around gasoline as a lab technician. (*Id.* at pp. 654–655.) After he developed a blood disorder that can result from such exposure, he and his wife sued Chevron for premises liability. (*Id.* at pp. 655–656.) A jury agreed that Chevron negligently managed the property, and the trial court denied Chevron's motion for judgment notwithstanding the verdict. (*Id.* at p. 658.)

The Sixth District Court of Appeal reversed, holding that Chevron "owed no duty as a landowner to protect [the primary plaintiff] from injuries arising from his employment at the facility that occupied the premises." (*Laico*, *supra*, 123 Cal.App.4th at p. 654.) After applying the *Rowland* factors to "determin[e] whether public policy require[d] a departure from the general rule of . . . section 1714," the appellate court answered in the affirmative and

13

found no basis for imposing premises liability on Chevron. (*Laico*, at pp. 659–660, 670.) While Chevron might have been aware that CRTC was conducting gasoline testing, there was no evidence it "knew that CRTC employees were handling gasoline without taking protective measures against benzene exposure," a hazard that was not "a dangerous condition of land owned by [Chevron] or under its control." (*Id.* at pp. 661, 670.) In addition, "*there [was] no evidence defining the relationship between [Chevron] and CRTC, whether landlord-tenant or otherwise.*" (*Id.* at p. 664, italics added.) Thus, the plaintiffs "failed to establish [Chevron's] knowledge of the danger, the right to inspect, or the ability to discover and remedy hazards of the workplace." (*Id.* at p. 670.) As a result, to impose a duty on Chevron would "amount[] to an assignment of vicarious or derivative liability for acts or omissions associated with [the primary plaintiff's] employment at CRTC, contrary to the policies expressed in *Privette* and its progeny." (*Ibid.*)

As a subsequent decision observed, *Laico* "was applying rules of law governing premises liability and was not applying the *Privette* doctrine." (*Zuniga v. Cherry Avenue Auction, Inc.* (2021) 61 Cal.App.5th 980, 992.) Although in *Laico* the Sixth District observed that the *Privette* line of cases "provide[d] a useful analogy to the issues presented," it applied section 1714 and the *Rowland* factors to reach its holding. (*Laico, supra,* 123 Cal.App.4th at pp. 659–660, 665–666, 668.) Indeed, *Laico* "agree[d] with [the] plaintiffs that CRTC was not functioning as an independent contractor, as it was not hired by [Chevron]," and "[t]he relationship between the two entities thus [did] not evoke the policy reasons underlying the peculiar risk doctrine—that is, to spread the risk of loss to one who benefits from the work by including the cost of workers' compensation insurance in the contract price." (*Id.* at p. 668.) Accordingly, *Laico* falls far short of establishing that the *Privette*

14

doctrine immunizes a landowner from liability because the owner necessarily delegates duties to the land's occupier.[6]

Kimco also relies on *Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, in which the Fourth District Court of Appeal affirmed summary judgment in favor of a landowner and its tenant in a suit brought by the employee of an independent contractor hired by the tenant. (*Id.* at pp. 1120–1121.) The landowner and tenant successfully moved for summary judgment "on the ground workers' compensation provided the exclusive remedy for [the plaintiff's] injuries under *Privette*" (*id.* at p. 1121), and the Fourth District rejected the plaintiff's arguments that the landowner was nonetheless liable because (1) it was acting as a general contractor when he was injured and (2) it owed a nondelegable duty to provide him with a safe workplace. (*Id.* at pp. 1123–1126.)

Although *Lopez* is factually similar to this case because the landowner had no employment relationship with its tenant or the independent contractor, the decision did not explain why the *Privette* doctrine protected the landowner. *Lopez* was issued before the Supreme Court emphasized that delegation, not the availability of workers' compensation, is the primary rationale for the doctrine, and the Fourth District did not address whether the landowner delegated any duty to its tenant. Thus, *Lopez* does not support Kimco's position that it delegated any duty involving the roof to

---

[6] We need not address whether *Laico* supports the conclusion that Kimco owed no duty to Ramirez even if *Privette* is inapplicable, because Kimco does make this claim. In any case, *Laico* is factually distinguishable in ways that affect the *Rowland* analysis. Chief among these is that the dangerous condition in *Laico* was created by "the functioning of the business that operated on the premises," and was not, as here, "a danger existing on the land independently of the occupant's activity." (*Laico, supra,* 123 Cal.App.4th at p. 660.)

15

Freeway, as " 'it is axiomatic that cases are not authority for propositions not considered.' " (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1160.)

Kimco also cites *Zamudio v. City & County of San Francisco* (1999) 70 Cal.App.4th 445 for the proposition that "courts have expanded the application of *Privette* to owners and occupiers of premises." In *Zamudio*, Division Five of this court held that a landowner that hired a construction manager, which in turn hired a subcontractor, was not liable for injuries to the subcontractor's employees. (*Id.* at pp. 447–448.) But in that case, the landowner delegated its duty to provide a safe workplace through its employment contract with the construction manager, not through a landlord-tenant relationship. (See *id.* at pp. 448, 450.) Although the *Privette* doctrine undoubtedly can protect landowners from liability, *Zamudio* is merely an example of how this occurs through a hiring-based chain of delegation. *Zamudio* does not hold that *Privette* applies whenever an independent contractor is hired to work on a landowner's property, regardless of the landowner's status as a hirer.

> b.    The lease's terms do not establish that Kimco delegated to Freeway a duty involving the roof's condition.

Having concluded that a landlord does not delegate to its tenant a duty to provide a safe workplace for any independent contractor the tenant may hire simply by virtue of the fact they are in a landlord-tenant relationship, we turn to whether Kimco delegated such a duty to Freeway based on the lease's terms. We conclude it did not. Kimco did not effectively "hire" Freeway to install and remove the sign, and the *Privette* doctrine is therefore inapplicable.

To begin with, no aspect of the lease establishes that Kimco delegated a duty involving the roof's condition to Freeway. The lease provided that

16

Freeway would "have the non-exclusive right to use the Common Area," which was defined to include the shopping center's "roofs." Kimco "reserve[d] to itself the exclusive right at any time to use the roof, foundation[,] or exterior walls (other than [Freeway's] storefront) for placing of signs or equipment, including utility equipment, or for purpose of additional construction." In addition, Freeway was responsible for paying "as Common Area Rent, one-twelfth (1/12th) of [its] annual share of Yearly Common Area Costs," which was defined as "all costs and expenses incurred by [Kimco] during each twelve (12) month period selected by [Kimco] for repair, replacement, maintenance, insurance, protection[,] and operation of the Common Area, and for compensation to management and service personnel." Since under the lease Kimco retained possession and control of the roof, including responsibility for maintenance, it did not delegate to Freeway a general duty of reasonable care with regard to dangerous conditions on the roof.[7] (See *Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1158; *Johnston v. De La Guerra Properties, Inc.* (1946) 28 Cal.2d 394, 399; *Stone v. Center Trust Retail Properties, Inc.* (2008) 163 Cal.App.4th 608, 612; Rest.3d Torts, Liability for Physical and Emotional Harm (2012) § 53 & com. c; see also *Srithong v. Total Investment Co.* (1994) 23 Cal.App.4th 721, 726 [landlord's duty to "maintain property in a safe condition" cannot be delegated to independent contractor].)

---

[7] The dissent responds to this observation by stating that whether Kimco "delegated any responsibility for the maintenance of the roof here is, under *Privette*, irrelevant." (Dis. opn. at p. 7.) But we make the observation only to negate any argument that *Privette* should somehow apply on the theory that the lease, although not employment-related, expressly delegated responsibility for the roof's condition to Freeway. Naturally, if Kimco had actually hired Freeway to remove the sign, the *Privette* doctrine would still shield Kimco from liability even though Kimco generally retained control and possession of the roof.

17

Nor did Kimco delegate to Freeway a duty to ensure the safety of the site where Ramirez performed his work. *Privette* delegation is project-specific, meaning it involves a duty limited not only to the contracted-for work but also to the place where that work occurs. At oral argument, Kimco claimed that in requiring Freeway to remove the sign, the lease necessarily delegated to Freeway the duty to ensure the safety of the area where that work was performed. Even assuming, without deciding, that the roof was reasonably included in that area, we reject the notion that a landowner may absolve itself of liability for conditions in a space over which it retains possession and control merely by assigning its tenant a task that could involve that space.[8]

Application of the *Privette* doctrine is also not justified on a theory that Kimco and Freeway's relationship with regard to the sign removal was analogous to an employer-independent contractor relationship. True, Kimco purported to "control[] [only] the results of [the sign removal] and not the means by which it [was] accomplished" (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 983), which might otherwise suggest that Freeway functioned like an independent contractor. But Freeway had no special "ability to perform the contracted work safely and successfully" compared to

---

[8] Although Freeway delegated to Ramirez any duty *it* had to ensure the worksite's safety, there is no rule against different parties holding overlapping duties. The fact that Ramirez implicitly assumed a duty to take precautions for his own safety when removing the sign might affect the overall analysis of whether Kimco is liable, but it does not establish that Kimco lacked a duty involving the worksite's condition under *Privette* specifically. If the law were otherwise, third-party tortfeasors with no relationship to the contracted-for work could rely on *Privette* to avoid liability merely because the injured party happened to be an independent contractor or its employee.

Kimco, and such an ability is a "major principle" that underlies the presumption that a hirer delegates responsibility for workplace safety to an independent contractor. (*Sandoval*, *supra*, 12 Cal.5th at p. 269.) Nor was Freeway in any business—whether as a general contractor, project manager, or otherwise—that had anything to do with the work Ramirez was hired to perform.[9] Thus, even if an employer-independent contractor relationship can coexist with a lessor-lessee relationship, one of the main "hallmarks of an employer-independent contractor relationship"—that "the [lessor] hired [the lessee] to perform work"—is missing. (*Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1668–1669.)

More fundamentally, the sign benefited Freeway more than it did Kimco, and Kimco did not directly or indirectly pay Freeway to install or remove it. The lease explicitly provided that the sign's installation would be "at [Freeway's] sole cost and expense" and that its removal was "the responsibility of [Freeway]." It would be completely speculative to suppose that the rent was nonetheless discounted to account for Freeway's sign-related expenses, much less that any such discount amounted to Kimco's indirect offsetting of the cost Freeway might incur should a worker be injured while installing or removing the sign. (See *Privette*, *supra*, 5 Cal.4th at p. 699.) Thus, Kimco did not effectively "hire" Freeway to perform the work at issue.

The dissent disagrees, taking the view that "the signage provisions in the lease are in substance a contract for the work, giving rise to presumptive

_____

[9] The dissent cites a series of cases in which *Privette* applied where there was a "contracting intermediary" between the original hirer and the independent contractor. (Dis. opn. at pp. 5–6.) Unlike Freeway, the intermediaries in those cases were hired by the original party to perform services they were normally in the business of providing.

delegation, ultimately to the independent contractor [Ramirez], of the duty to provide a safe workplace." (Dis. opn. at p. 9.) But whether a lease or some other non-work-specific agreement is "in substance" a contract to perform work is an amorphous standard, and one that would create significant uncertainty in an area where "clear rules about who's responsible for avoiding harm to workers" are needed. (*Sandoval*, *supra*, 12 Cal.5th at p. 264.) Left unanswered is whether, for example, lease provisions like those here that require tenants to keep the premises pest-free, maintain the premises in "good and safe condition," and "make all repairs, replacements and alterations" necessary would be in substance contracts to perform work for purposes of applying *Privette*. Despite addressing the *Privette* doctrine numerous times, our state Supreme Court has *never* suggested that it applies to a non-hirer, much less on the theory the dissent suggests.

Finally, Kimco claims that "it would be 'illogical and unfair' to subject [it] to significant liability simply because Freeway chose to handle the [sign] removal itself instead of letting Kimco take care of it." (Quoting *Laico*, *supra*, 123 Cal.App.4th at p. 668.) The dissent echoes this concern, perceiving "no reason why the result should be different" based on whether the lease requires a tenant to be responsible for work that an independent contractor will do or whether the landlord hires the independent contractor itself. (Dis. opn. at p. 14.) But the unfairness the *Privette* doctrine was originally designed to avoid is "impos[ing] liability on [one entity] for an injury attributable to [another entity], whose liability is limited by workers' compensation insurance." (*Laico*, at p. 668; *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253, 256; see *Ruiz v. Herman Weissker, Inc.* (2005) 130 Cal.App.4th 52, 62 [policy aim is to ensure "the ultimate responsibility for the injury will be borne by the person whose fault caused

20

that injury or, failing that, by the person who benefited from the work"].) Here, Kimco retained possession and control of the roof, and if any entity acted negligently with regard to the roof's condition, it was Kimco, not Freeway. Because Kimco did not delegate a duty involving the roof, the *Privette* doctrine does not shield it from *direct* liability for any tortious breach of that duty.

In closing, we reiterate that the *Privette* doctrine is not the only path by which Kimco may ultimately avoid liability, or even the only path by which it may be deemed to have owed no duty to Ramirez. We hold only that Kimco cannot prevail based on *this particular doctrine*, which has never been applied in circumstances such as these. If the doctrine is to be expanded as the dissent contemplates, it should be the Supreme Court, not us, that does so.

III.
DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion. Appellants are entitled to their costs on appeal.

_____
Humes, P.J.

I CONCUR:


_____
Wiss, J.*


*Judge of the Superior Court of the City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*Ramirez v. PK I Plaza 580 SC LP*  A162593

DISSENTING OPINION OF BANKE, J.

In my view this is a more complex case than the majority opinion suggests, and I reach a different conclusion as to the applicability of the *Privette* doctrine.[1]  I also conclude no triable issue exists as to whether the *Kinsman* exception[2] to the doctrine applies, and I therefore would affirm the summary judgment.

In the "nearly three decades since" our Supreme Court "decided *Privette*," it has "repeatedly reaffirmed the basic rule that a hirer is typically not liable for injuries sustained by an independent contractor or its workers while on the job." (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 41 (*Gonzalez*).)  This rule, commonly referred to as the *Privette* doctrine, applies to any person or entity in the hiring chain.  (*Sandoval v. Qualcomm Incorporated* (2021) 12 Cal.5th 256, 270, fn. 2 *(Sandoval)*; *Tverberg v. Fillner Construction, Inc.* (2010) 49 Cal.4th 518, 528 (*Tverberg*).)  Thus, an injured independent contractor, or an injured employee of, or consultant to, an independent contractor, no matter how far down the contracting chain, typically cannot sue either the contractor that let the subcontract or hired the consultant, or the person or entity for whom the work is being done.  (*Tverberg*, at p. 528.)

With respect to injured employees of independent contractors, the Supreme Court has grounded the *Privette* doctrine on the availability of worker's compensation.  As the court explained in *SeaBright Ins. Co. v. U.S. Airways, Inc.* (2011) 52 Cal.4th 590, 598–599 (*SeaBright*), "[i]n light of [the workers' compensation] limitation on the independent contractor's liability to

---

[1] *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*).

[2] *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659 (*Kinsman*).

1

its injured employee, *Privette* concluded that it would be unfair to permit the injured employee to obtain full tort damages from the hirer of the independent contractor. That was especially so because (1) the hirer likely paid indirectly for the workers' compensation insurance as a component of the contract price [citations], (2) the hirer has no right to reimbursement from the contractor even if the latter was primarily at fault [citations], and (3) those workers who happen to work for an independent contractor should not enjoy a tort damages windfall that is unavailable to other workers [citations]."

With respect to injured independent contractors or consultants, themselves, the court has reached the same result but employed a different rationale. (*Tverberg, supra,* 49 Cal.4th at pp. 527–529 [observing *Privette* does not apply directly to independent contractors]; see *Gonzales, supra,* 12 Cal.5th at p. 42 [same result as "to a solo independent contractor who has no employees and who has declined to obtain workers' compensation insurance"].) "Unlike a mere employee, an independent contractor, by virtue of the contract, has authority to determine the manner in which . . . [the] work is to be performed, and thus assumes legal responsibility for carrying out the contracted work, including the taking of workplace safety precautions." (*Tverberg,* at p. 522.)

Thus, as the court observed in *Gonzalez, supra,* 12 Cal.5th at page 41, its more recent cases "emphasize delegation as the key principle underlying [the *Privette* doctrine]: Because the hirer presumptively delegates to the independent contractor the authority to determine the manner in which the work is performed, the contractor also assumes the responsibility to ensure that the worksite is safe, and the work is performed safely." This "presumptive delegation" of the duty to provide a safe workplace (*Sandoval,*

*supra,* 12 Cal.5th at p. 271)*,* in turn, insulates all those in the hiring chain from tort liability for workplace injuries suffered by an independent contractor or an employee thereof or consultant thereto.  *(Id*. at p. 270, fn. 2; *Tverberg*, *supra*, 49 Cal.4th at p. 528.)

The high court has identified only "two limited circumstances" in which the presumption of delegation is overcome.  (*Gonzales*, *supra*, 12 Cal.5th at p. 38.)

The first was articulated in *Kinsman,* wherein the court held that a landowner/hirer can be liable to an injured independent contractor or its employees if the landowner (a) " 'knew, or should have known, of a latent or concealed preexisting hazardous condition on its property,' " (b) " 'the contractor did not know and could not have reasonably discovered this hazardous condition,' " and (c) " 'the landowner failed to warn the contractor about this condition.' "  (*Gonzalez, supra,* 12 Cal.5th at p. 43, quoting *Kinsman, supra,* 37 Cal.4th at p. 664.)  This is a different, and more rigorous, standard than is otherwise applicable in the context of a landowner's common law tort liability to third parties. (*Id.* at p. 674 ["the usual rules about landowner liability must be modified, after *Privette,* as they apply to a hirer's duty to the employees of independent contractors"]; see *Gonzalez, supra,* 12 Cal.5th at p. 50 [refusing to impose on landowner, in *Privette* context, common law tort duty to remedy obvious hazards on property].)

Thus, under the *Privette* doctrine as explicated in cases such as *Kinsman* and *Gonzales,* a landowner has no obligation to remedy a latent or concealed hazardous condition, but must simply provide sufficient warning of it.  It is then up to the independent contractor to decide how best to do the contracted work in light of the warned of condition or decide not to proceed with the work.  (*Gonzalez, supra,* 12 Cal.5th at pp. pp. 51–52, 54; *Kinsman, supra,*

3

37 Cal.4th at p. 673 [having been warned, it is up to contractor to take precautions]; *McCullar v. SMC Contracting, Inc.* (2022) 83 Cal.App.5th 197, 208 (*McCullar*); see *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 215 (*Hooker*) [under *Privette* doctrine, hirer is not liable for merely permitting a dangerous work condition or practice to exist].)

The landowner/hirer, likewise, has no obligation with respect to a hazardous condition of which an independent contractor is aware, including a condition the contractor "cannot remedy or protect against through the adoption of reasonable safety measures." (*Gonzales, supra,* 12 Cal.5th at pp. 39, 45–51.) Again, it is up to the contractor to devise a means to do the contracted work safely or refuse to perform it. (*Id.* at pp. 50–51, 54–55.)

Nor does the landowner/hirer have an obligation to warn of a hazardous condition of which the contractor reasonably should have been aware. "[T]he responsibility for job safety delegated to independent contractors may and generally does include explicitly or implicitly a limited duty to inspect the premises as well." (*Kinsman, supra,* 37 Cal.4th at p. 677.)

The second exception was articulated in *Hooker,* wherein the high court "held that a hirer will be liable where it exercises retained control over any part of the contractor's work in a manner that affirmatively contributes to the worker's injuries." (*Gonzalez, supra,* 12 Cal.5th at p. 42.) Retained control over the safety conditions of the worksite, in and of itself, is insufficient to establish liability. (*Ibid*.) "[U]nless a landowner retains control over any part of the contractor's work *and* negligently *exercises* that retained control in a manner that *affirmatively* contributes to the injury [citation], it will not be liable to an independent contractor or its workers." (*Id.* at p. 38, italics added; accord, *Sandoval, supra,* 12 Cal.5th at pp. 274–279

4

[discussing *Hooker* exception in further detail]; *McCullar, supra,* 83 Cal.App.5th at pp. 205–207 [same].)

Thus, "this exception to *Privette* is not met solely because a hirer is aware that there is an unsafe condition on the worksite or knows that the contractor is engaging in an unsafe work practice. [Citation.] Something more is required, such as ' "inducing injurious action or inaction through actual direction" ' [citation]; directing ' "the contracted work be done by use of a certain mode" ' [citation]; or interfering with ' "the means and methods by which the work is accomplished." ' " (*Gonzales, supra,* 12 Cal.5th at p. 42; *Sandoval, supra,* 12 Cal.5th at p. 276 ["Contract workers must prove that the hirer *both* retained control [of the contracted work] *and* actually exercised that retained control in such a way as to affirmatively contribute to the injury."]; see *McCullar, supra,* 83 Cal.App.5th at pp. 205–207.) Accordingly, merely providing plans and specifications to a contractor does not trigger the application of *Hooker* and *Sandoval.*

There is no question in the instant case that had the landowner/lessor hired the plaintiff, an independent electrical contractor, to remove the departing lessee's sign, the *Privette* doctrine, as it has been developed with respect to independent contractors who are, themselves, injured, would apply.

I also think there is little doubt that would be the case had the landowner/lessor entered into a separate contract with the lessee for removal of the sign, with the lessee thus becoming the contracting intermediary between the landowner/lessor and the independent contractor. (See *Sandoval, supra,* 12 Cal.5th at pp. 265–266 [landowner hired electrical engineering service, which, in turn, hired specialist consultant]; *Tverberg, supra,* 49 Cal.4th at pp. 528–529 [general contractor hired subcontractor, which, in turn, hired independent contractor]; *Ruiz v. Herman Weissker, Inc.*

5

(2005) 130 Cal.App.4th 52, 56, 62 (*Ruiz*) [landowner's "contract administrator" not in direct hiring chain and responsible for monitoring work for safety and contract compliance not liable to injured employee of independent contractor; "the policies enunciated in *Privette* . . . are equally applicable in determining the liability of the hirer's agent"]; *Zamudio v. City and County of San Francisco* (1999) 70 Cal.App.4th 445, 447, 451 (*Zamudio*) [landowner hired construction manager, which, in turn, hired specialty subcontractor; "principles of *Privette* and *Toland* . . . are crafted to insulate an owner and general manager from tort liability arising from a subcontractor's acts which caused injury to its employee"].) Upon entering into a separate contract with the lessee for the work, the landowner/lessor would presumptively delegates its duty to provide a safe workplace for that work to the lessee, and the lessee, in turn, could, and likely would, hire a specialty independent contractor to perform the work, as the lessee did here. In fact, the lease in question expressly contemplated the lessee would hire a contractor to do the work of installing and removing the signage.

I also cannot agree with the majority's statement that "[e]ven assuming" the roof and unlocked cupola were, in this case, "reasonably included" in "the area where [the] work was performed," the landowner/lessor cannot "absolve itself of liability for conditions in a space over which it retains possession and control merely by assigning its tenant a task that could involve the space." (Maj. opn. *ante*, at p. 18.) *If* the landowner/lessor had contracted directly with the electrical contractor or *if*, as is my view, the landowner/lessor and lessee had entered into a separate contract for the work, whether the property owner "retained possession and control" over the roof would, under *Privette,* be immaterial.

6

In fact, that was the situation in *Gonzalez,* where an independent contractor hired to clean skylights on the homeowner's roof slipped and fell on an allegedly unsafe, poorly maintained part of the roof. (*Gonzalez, supra,* 12 Cal.5th at p. 40.) The owner clearly "retained control" of the roof, but that was immaterial since workplace safety had presumptively been delegated to the contractor. It was therefore the contractor's responsibility to determine how to perform the work safely in light of the hazardous condition of the roof, or to refuse to do the work. (*Gonzalez,* at pp. 51–52, 54; see *Gravelin v. Satterfield* (2011) 200 Cal.App.4th 1209, 1212–1213 (*Gravelin*) [property owner not liable for injuries sustained by employee of contractor hired by satellite company to install satellite dish who attempted to access roof by using a small roof extension that collapsed; owner clearly retained possession and control of the roof and extension, but it was the contractor's responsibility to determine how to safely do the contracted work].)

Further, the court in *Gonzales* expressly rejected the independent contractor's argument that the owner had never delegated to him the owner's "duty to maintain the roof in a reasonably safe condition." (*Gonzales, supra,* 12 Cal.5th at p. 54.) The court explained that "while [the owner] may not have delegated any duty to repair the roof or make other structural changes to it, [the owner] did delegate to [the independent contractor] a duty to provide a safe workplace to his workers and to perform the work for which he was retained in a safe manner." (*Ibid.*) "This encompassed a duty on [the contractor's] part to assess whether he and his workers could clean the skylight safely despite the existence of the known hazardous conditions on the roof." (*Ibid.*) Accordingly, whether or not the landowner/lessor delegated any responsibility for the maintenance of the roof here is, under *Privette,* irrelevant.

In my view the salient inquiry in this case is whether the fact that the request that the lessee both install and remove the electrical signage (through the anticipated hiring of an independent contractor to perform the work) was included in the lease, rather set forth in a separate contract, removes this case from the ambit of the *Privette* doctrine. The lease provisions in this regard are detailed and set forth in several paragraphs of "Rider B" and a three-page "Exhibit C" that collectively set forth a variety of detailed specifications and approval requirements pertinent to the work.[3] It seems too simple to say that because the parties are denominated "lessor" and "lessee," this forecloses any other legal relationship. (See *Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1668 [presuming a lessor-lessee relationship and an employer-independent contractor relationship "are not mutually exclusive" and that "a lease *could* give rise to an employer-independent contractor relationship"].)

If in *substance* the provisions of a lease call for the lessee to do work that will be performed by a specialized independent contractor, it would seem to be the height of form over substance to say the *Privette* doctrine does not apply and the independent contractor can sue the landowner/lessor under common law premises liability principles, which, of course, the contractor could not do if the landowner/lessor, rather than the lessee, hired the contractor directly or if the landowner/lessor entered into a separate contract with the lessee for the work.

---

[3] Thus, I cannot agree with the majority that the landowner had "no relationship to the contracted-for work." (Maj. opn. *ante*, at p. 18, fn. 8.) To the contrary, the landowner/lessor requested that the work be performed and provided the specifications for it.

8

The Supreme Court has consistently pointed out in reaffirming and refusing to constrict the *Privette* doctrine, that if it did not apply, it would lead to the anomalous result that the plaintiff contractor/employee would be able to seek a tort recovery, while other contractors/employees performing the same work, could not. (E.g., *Gonzalez, supra,* 12 Cal.5th at p. 51 [court's holding that independent contractor cannot sue landowner/hirer "avoids the unfair 'tort damages windfall' that would result from adopting a rule that allows independent contractors and their workers to obtain tort damages from the landowner while the landowner's own employees are limited to workers' compensation"]; *Seabright, supra,* 52 Cal.4th at p. 603 ["it would be unfair to permit the injured employee to obtain full tort damages from the *hirer* of the independent contractor—damages that would be unavailable to employees who did not happen to work for a hired contractor"]; *Tverberg, supra,* 49 Cal.4th at p. 528 ["[i]t would be anomalous to allow an independent contractor to whom responsibility over the hired work has been delegated to recover against the hirer on a peculiar risk theory while denying such recovery to an independent contractor's *employee,* a person who lacks any authority over the hired work"][4].)

So, as I see it the question here is whether the signage provisions in the lease are in substance a contract for the work, giving rise to presumptive delegation, ultimately to the independent contractor, of the duty to provide a safe workplace. Were there a provision that the lessee was to be paid, credited, or reimbursed for this work (as there is for other work the lessee

_____

[4] Thus, the majority's suggestion that the existence of workers' compensation for workplace injuries is no longer of concern to the Supreme Court in applying the *Privette* doctrine (see maj. opn. *ante*, at pp. 9, 15), appears unwarranted.

might do), it would seem evident that the request that the work be done would in substance be a contract for the work.

However, as the majority opinion points out, the lease states the signage is to be constructed and installed at the tenant's expense. Should this make a difference?

This is a perplexing question given that the *Privette* doctrine, particularly as applied to independent contractors, themselves, is grounded on presumptive delegation, which is not tied to any contractual relationship between the landowner that requests the work and the contractor that ultimately performs it. Otherwise, the doctrine would not apply where there are intermediaries, no matter how long the string, between the landowner requesting the work and the independent contractor performing it. Nor would it apply in cases such as *Ruiz*, where the defendant was not in the contracting chain at all, but instead was considered the "agent" of the landowner in seeing that the work was done per contract specifications.

In this case, the landowner/lessor specified (in considerable detail) the work, and the lessee was responsible for having it done. I see no reason why the result here should be different than where a property manager or contract administrator sees to it that requested work is performed.

Similarly, if in *Gravelin,* for example, the defendant that purchased the residential satellite service had been a renter, rather than the homeowner, should that difference have enabled the injured employee of the independent contractor hired by the satellite company to install the satellite dish, to sue the landowner/lessor for damages? If so, that would result in a profound difference in terms of recovery based on a happenstance of which the independent contractor likely was wholly unaware—the work, the conditions,

and the independent contractor's responsibility for workplace safety otherwise being identical.

Moreover, regardless of whether a landowner pays the first link in the chain of presumptive delegation for the specified work, the specialty contractor that actually performs the work *is* paid and thus "is not, in the words of *Privette . . . ,* a 'hapless victim' of someone else's misconduct. In that situation, the reason for imposing vicarious liability on a hirer— compensating an *innocent third party* for injury caused by the risks inherent in the hired work—is missing." (*Tverberg, supra,* 49 Cal.4th at p. 528.) Here, too, the electrical contractor was not an "innocent third party." Rather, having contracted with the lessee to perform the requested work, he was delegated, and, in turn, assumed, the responsibility for workplace safety and, absent an exception to the *Privette* doctrine, had to decide how to safely perform the contracted work or, if he determined that was not feasible, to decline to do the work. (See *Gonzalez, supra,* 12 Cal.5th at pp. 50–51, 54; *Kinsman, supra,* 37 Cal.4th at pp. 673–674.)

Additionally, nearly all of the other of the policy reasons the court has articulated with respect to *Privette's* application to independent contractors focus *on the independent contractor*, not the entity or person who asks that the work be done. Independent contractors "can typically factor the cost of [any] added safety precautions or any increased safety risks into [*their*] contract price." (*Gonzalez, supra,* 12 Cal.5th at p. 51.) "*They* [independent contractors] can also purchase worker's compensation to cover any injuries sustained while on the job." (*Ibid.*, italics added.) "[A]n *independent contractor*, by virtue of the contract, has authority to determine the manner in which . . . [the] work is to be performed, and thus assumes legal responsibility for carrying out the contracted work." (*Tverberg,* 49 Cal.4th at

11

p. 522, italics added.) And, applying the *Privette* doctrine "avoids the unfair 'tort damages windfall' " that would inure *to the independent contractor* solely because of the manner in which the landowner requested the work, while had the work been done by the landowner's own employees, any workplace injury would be compensated through the workers' compensation system. (*Ibid.*)

It is true that in *Privette,* the court also observed that the "hirer" indirectly pays into the workers' compensation system. (*Privette, supra,* 5 Cal.4th at pp. 698–699; see *SeaBright, supra,* 52 Cal.4th at p. 599, citing to *Privette.*) However, this point is scarcely mentioned in the court's more recent cases focusing on the presumptive delegation of workplace safety. Understandably. The hirer only pays indirectly if the independent contractor includes this in the contract price. So whether, and the extent to which, the hirer may indirectly pay is not a matter as to which the hirer has any obligation or control. Further, presumptive delegation may extend down a long line of contractors, subcontractors, and consultants. Thus, any "indirect" payment by the initial hirer may be of infinitesimal consequence to the contractor or consultant who ultimately performs the work.

I agree with the majority (maj. opn. *ante*, at p. 20) that our Supreme Court has never decided—in fact, never considered—whether *Privette* applies in a situation like that presented here, where a lease obligates a lessee to have work done on the property and expressly contemplates that work will be performed by an independent contractor.

The majority acknowledges, however, that in *Lopez v. University Partners* (1997) 54 Cal.App.4th 1117 (*Lopez*), the Court of Appeal, on similar facts, held *Privette* applied. (Maj. opn. *ante*, at p. 15.) In that case, an employee of an independent contractor sued the University (the landowner/lessor) and its lessee for injuries sustained while doing work

12

pursuant to a contract between the lessee and his employer. (*Id.* at p. 1120.) The trial court granted summary judgment to the University and its lessee on the basis of *Privette.* (*Ibid.*)

On appeal, the employee maintained *Privette* did not apply to the lessee because it did not hire his employer "as an 'owner' of the subject construction site," but rather, hired his employer as a "general contractor" that assertedly was not entitled to the protection of *Privette.* (*Lopez, supra,* 54 Cal.App.4th at pp. 1122–1123.) The appellate court disagreed, stating a person who hires a contractor "could be an owner, a lessee or a general contractor." (*Id.* at p. 1123.) Furthermore, there was no evidence the lessee was acting as a "general contractor." (*Ibid.*) The employee made a similar, unsupported claim that the University was acting as a "general contractor," which the appellate court also rejected. (*Id.* at pp. 1124–1125.) And, indeed, as the Supreme Court has since made clear, any entity or person in the contracting chain, including a general contractor, comes within *Privette.* The employee further maintained the University and its lessee owed him nondelegable duties to provide a safe workplace. The appellate court again disagreed, stating an owner or general contractor may be liable for injuries to an employee of a subcontractor where the owner or general contractor "retain[s] sufficient control over the subcontractor's work," but there was no evidence the University or its lessee did so. (*Id.* at pp. 1125–1126.) As the Supreme Court has, again, made clear, such control must be both extensive and actually exercised.

The majority dismisses *Lopez* on two grounds—the appellate court did "not explain" why *Privette* applied to the University (the landowner/lessor), and the opinion "was issued before the Supreme Court emphasized that delegation, not the availability of workers' compensation, is the primary

13

rationale for the doctrine." (Maj. opn. *ante*, at p. 15.) As to the first ground, I suggest the *Lopez* court shared the same pragmatic views I have articulated. As to the second ground, *Lopez* was a quintessential *Privette* case because the plaintiff was an *employee* of an independent contractor and therefore *Privette's* workers' compensation rationale squarely applied. It was not until our high court concluded the same outcome should apply to an injured independent contractor that the court turned to a delegation rationale. Thus, *Lopez* cannot be discounted because it predates application of the *Privette* doctrine to injured independent contractors.

I am ultimately persuaded *Privette* should apply here since nearly every policy reason on which the high court has relied applies, and given the court's emphasis on the unfairness of the disparity in outcomes if the *Privette* doctrine does not apply. I see no reason why the result should be different where, as here, a lease requires the lessee to do work on the property that the parties contemplate will be done by an independent contractor, than where the landowner/lessor, itself, hires the independent contractor or enters into a separate contract with the lessee to arrange for the work to be done by an independent contractor. In each of these scenarios, the independent contractor has been presumptively delegated the duty for workplace safety and it is up to the independent contractor to make a reasonable inspection of the portions of the property that will be accessed in performing the work and either take precautions in light of those conditions or elect not to do the work.

The majority says applying the *Privette* doctrine in cases like this one would result in "significant uncertainty" in the application of the doctrine. (Maj. opn. *ante*, at p. 20.) However, I fail to see why there should be any difficulty in determining whether a lease, like the lease here, is the first link in a "contracting chain" that contemplates, and results in, the hiring of an

14

independent contractor to do the work. The court had no difficulty, for example, in *Ruiz* in determining that a "contract administrator"—that was not even in the hiring or contracting chain—came within the *Privette* doctrine. (*Ruiz, supra,* 130 Cal.App.4th at pp. 56, 62; see *Zamudio, supra,* 70 Cal.App.4th at p. 447 [construction manager came within doctrine].)

Because the majority concludes the *Privette* doctrine does not apply, it does not consider whether the *Kinsman* exception applies. As recited above, this exception requires the plaintiff to prove that the landowner (a) " 'knew, or should have known, of a latent or concealed preexisting hazardous condition on its property,' " (b) " 'the contractor did not know and could not have reasonably discovered this hazardous condition,' " and (c) " 'the landowner failed to warn the contractor about this condition.' " (*Gonzalez, supra,* 12 Cal.5th at p. 43, quoting *Kinsman, supra,* 37 Cal.4th at p. 664.)

Plaintiff's case indisputably falters as to the second requirement—that he did not know or could not have known of the allegedly hazardous condition. Plaintiff opened the cupola access door and entered the area. Nine feet from the access door, the cupola's floor "transitions to an opening with [two foot by six foot] joists," which are two feet apart from one another. Plaintiff traveled *twelve feet* into the cupola before he fell between the joists and through the floor. Therefore, he plainly was aware of the assertedly hazardous condition. As *Kinsman* and *Gonzalez* make clear, once plaintiff became aware of the allegedly hazardous condition, *even if it could not be rectified*, it was his responsibility to take steps to complete the work safely in light of the hazardous condition, or to refuse to do the work. (*Gonzales, supra,* 12 Cal.5th at pp. 39, 45–51, 54; see *Gravelin, supra,* 200 Cal.App.4th at pp. 1216–1217 [roof extension that contractor stepped on and fell through

15

was not a concealed hazard; its flimsiness and lack of structural strength were obvious].)

I would therefore affirm the summary judgment.

I dissent:

                           _____

                           Banke, J.

*Ramirez v. PK I Plaza 580 SC LP*  A162593

Trial Court:

Superior Court of the County of Alameda


Trial Judge:

Hon. Evelio M. Grillo


Counsel for Plaintiffs and Appellants:

Michael Alder, Samantha Hernandez-Ortega, Alder Law, P.C.; Brooke
L. Bove, Bove Law Group


Counsel for Defendants and Respondents:

W. Eric Blumhardt, Jessica Pliner, Lewis Brisbois Bisgaard & Smith
LLP

*Ramirez v. PK I Plaza 580 SC LP*  A162593