Filed 3/10/25  Abbassi v. Regents of the University of California CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ALI ABBASSI,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Defendant and Respondent. | B332650<br><br>(Los Angeles County Super. Ct. No. 21STCV06681) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge.  Affirmed.

Blanco & Arias and Janeth Arias for Plaintiff and Appellant.

Horvitz & Levy, H. Thomas Watson, Karen M. Bray; David Weiss Law, David J. Weiss, Nicholas A. Weiss, and Skyla L. Gordon for Defendant and Respondent.

\* \* \* \* \* \*

An employee who had been promoted up through the ranks was eventually asked to serve—and did serve—as the head of his department on an interim basis. But when his boss reconfigured what that job would entail on a permanent basis and sought applicants in a nationwide search, the employee did not apply. Instead, he sued for discrimination, harassment, retaliation, and related claims. The trial court granted summary judgment on those claims, and the employee appeals that ruling only as to his discrimination and harassment claims. Because his challenges have no merit, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

I. **Facts**

Ali Abbassi identifies as a Persian Muslim man.

A. ***Abbassi is hired and repeatedly promoted at UCLA Extension through 2018***

In 2011, Abbassi started working for UCLA Extension, which is a part of UCLA and hence overseen by the Regents of the University of California (Regents). He started as a program coordinator for the marketing department. Over the next seven years, Abassi received several promotions: He was promoted to marketing liaison in 2012, to marketing manager in 2015, and to director of marketing strategy in 2016. For the last promotion to

2

a director-level title, he had to apply and be interviewed. Each promotion entailed an increase in salary; Abbasi also received discretionary salary increases in between the promotions.

**B.** *Abbassi begins to serve as the Interim Senior Director of Marketing*

In November 2018, Abbassi was promoted to head of the marketing department at UCLA Extension on an interim basis. He was given the title Interim Senior Director of Marketing, an increase in salary, and an additional stipend to account for the increased duties.[1] Although the policy at UCLA Extension was to fill director-level positions after an "open recruitment process" that included a "formal job posting," UCLA Extension had the authority to fill vacancies in those positions on an interim basis if there was a "need for immediate coverage in the organization until a permanent incumbent [could] be vetted and selected." The employees serving in these positions on an interim basis were not "shoe-in[s]" to be selected during the open recruitment process. UCLA Extension had on three occasions appointed the employee holding the director-level position on an interim basis as the permanent director without that employee going through an open recruitment process.

Notwithstanding the general policy, plaintiff had an "understanding" that he would be automatically selected to permanently fill the Senior Director of Marketing position and that the nationwide selection process would be bypassed entirely. UCLA Extension's Associate Director of Human Resources emailed Abbassi in 2019 to clarify that Abbassi was *not*

---

[1] Abbassi was not given any further pay raises, despite his requests, because he was already at "the top of the pay range" for "his job classification."

guaranteed the permanent position but was welcome to apply for a permanent appointment once a new dean for UCLA Extension was appointed. Other supervisors also told Abbassi that his position was strictly interim.

C. ***Abbassi butts heads with the interim co-deans and deans regarding work matters***

During the 14 months between his appointment as interim Senior Director of Marketing in November 2018 and January 2020, Abbassi reported to two interim co-deans of UCLA Extension. Although his work was at times described as "terrific," Abbassi's work was at times criticized:

-- On one occasion, one of the interim co-deans called Abbassi into her office, with another department director present, and asked him why he did not send a promotional email. Abbassi felt that this criticism amounted to being "ridiculed" and "berated" in an "aggressive" and "unprofessional" manner.

-- Later, when Abbassi entered the interim co-dean's office to present proof that he sent the email, while she was in the middle of a meeting, the co-dean "very aggressive[ly]" dropped the papers Abbassi had handed her and, in a "very dismissive" tone, told Abbassi that he "need[ed] to get out of" her office.

-- At another meeting, Abbassi gave a marketing presentation at the interim co-dean's request. However, when the interim co-dean felt that Abbassi's presentation "missed the mark and was not well received" by the other directors at the meeting, she "stepped in and shifted the focus of the meeting." Abbassi felt that she "diverted" the attendees' discussion away from his presentation, and claimed that she "ridiculed" and "berated" him in front of his colleagues. Abbassi complained to

4

the Director of Human Resources, but at that time did not characterize it as discrimination or harassment.

-- During a budget meeting, the other interim co-dean used what Abbassi perceived as a "condescending tone" toward him. That co-dean also reduced the budget of Abbassi's marketing department, which put him "in a position of stress and worry" and which Abbassi believed was a "set up" to ensure his failure.

When a new dean took over UCLA Extension in January 2020, the new dean sometimes criticized Abbassi's work:

-- When Abbassi handed the new dean a financial analysis Abbassi had, on his own and outside of his job duties, previously prepared that "projected" a multi-million dollar deficit for UCLA Extension in the coming year, the new dean "got really upset" with Abbassi for unilaterally forwarding that analysis to the Vice Chancellor of the university and outside auditors, "[r]ather than thank[ing]" Abbassi. Five months later, Abbassi lost access to the university's financial software, and Abbassi "imagine[d]" that the new dean had been the one to deny him access, although Abbassi admitted not knowing for sure.

-- During meetings, the new dean would let Abbassi "drown[] in" "questions" asked by other colleagues about the performance of the marketing department.

-- The new dean would cancel previously scheduled one-on-one meetings or exclude Abbassi from meetings.

-- The new dean once emailed Abbassi to tell him that his social media posts about UCLA Extension "always miss the mark." Abbassi responded by scolding the new dean for being "condescending, hostile and unprofessional."

At no point did the interim co-deans or the new dean make any remarks to or about Abbassi pertaining to his national origin or religion.  However, one UCLA Extension employee stated that Abbassi had been "ridiculed" by supervisors, and had experienced "overt discrimination, lies, retaliation and setups"; the employee did not provide any further detail.  A different employee who resigned from UCLA Extension referred to the work environment there as "toxic."

## D.  *The new dean reformulates the permanent position, but Abbassi elects not to apply for it*

After "identif[ying] a gap in the marketing department," the new dean reframed the Senior Director of Marketing position and created a new and different job position—called the Executive Director of Strategic Communications and Marketing—to better serve UCLA Extension's marketing department.

The new dean assembled a committee to conduct a national search and select the best candidate for this new position.

The new dean personally reached out to Abbassi to inform him that the position had been posted in May 2020.

Abbassi did not apply, and the position ultimately went to one of the applicants.

## E.  *Abbassi resigns*

Abbassi took medical leave in October 2020, and resigned from UCLA Extension on May 17, 2021.

## II.  Procedural Background

On February 18, 2021, Abbassi sued the Regents.  In the operative first amended complaint, plaintiff asserted causes of action for (1) discrimination on the basis of race/national origin

6

(namely, that he is Persian Muslim)[2] under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), (2) harassment based on race/national origin under FEHA, (3) retaliation under FEHA, (4) retaliation under Labor Code section 1102.5, and (5) failure to prevent discrimination, harassment, and retaliation under FEHA.[3]

The Regents moved for summary judgment or summary adjudication. After a full round of briefing and a hearing, the trial court issued a 15-page order granting summary judgment. As pertinent here, the court ruled that (1) Abbassi's discrimination claim failed because the undisputed facts established that (a) UCLA Extension did not act with any discriminatory motive, and (b) Abbassi never suffered an adverse employment action; and (2) Abbassi's harassment claim failed because the undisputed facts established that (a) the conduct Abbassi faced was not "related to his protected status," and (b) that conduct did not amount to actionable harassment.[4]

Following the entry of judgment for the Regents, this timely appeal followed.

---

[2] Although the caption page of plaintiff's complaint states that his harassment claim is also on the basis of religious creed, the only protected characteristics he asserted in the body of the complaint are race and national origin.

[3] Plaintiff also asserted a cause of action for wrongful constructive termination in violation of public policy, but later voluntarily dismissed it.

[4] The trial court also granted summary adjudication on both of Abbassi's retaliation claims and his failure to prevent claim. Because Abbassi does not challenge those rulings on appeal, we do not discuss them further.

7

**DISCUSSION**

Abbassi challenges the trial court's grant of summary judgment on his discrimination and harassment claims.

Summary judgment is appropriate when the moving party (usually, the defendant) shows "[it] is entitled to a judgment as a matter of law" on a particular claim (Code Civ. Proc., § 437c, subd. (c)) because, among other things, the plaintiff cannot establish "[o]ne or more of the elements of the[ir] cause of action" (*id.*, subds. (o)(1) & (p)(2)). In this way, summary judgment serves as "'a vehicle to weed the judicial system of an unmeritorious case.'" (*Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 299.) Summary judgment should be denied only where there are "genuine" or "triable" issues of fact to be resolved at trial—that is, where "the evidence would allow a reasonable trier of fact to find . . . in favor of the party opposing the motion." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 859-860 (*Serri*).) We review the grant of summary judgment de novo (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286), and in so doing, construe the evidence in the light most favorable to the nonmoving party, including resolving any doubts in favor of that party (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717; *Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39).

## I. Discrimination

### A. *Pertinent law*

Among other things, FEHA makes it unlawful "[f]or an employer, because of . . . race . . . [or] national origin . . . to discriminate against [a] person . . . in terms, conditions, or privileges of employment." (Gov. Code, § 12940, subd. (a); *Bailey*

8

*v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 626 (*Bailey*).)

Because proving that an employer discriminated against an employee "in terms, conditions, or privileges of employment" "*because of*" "race" or " national origin" turns on the employer's motive, and because motive is typically established by circumstantial evidence, courts employ a burden-shifting mechanism for sussing out whether the adverse employment action the plaintiff suffered with respect to the terms, conditions, or privileges of employment was the product of a discriminatory (and hence actionable) motive. (See *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355-356.) When that mechanism is applied to a summary judgment motion, the employer bears an "initial burden" of establishing that the conduct alleged to be an adverse employment action was based on "legitimate reasons . . . 'unrelated to unlawful discrimination.'" (*Serri, supra,* 226 Cal.App.4th at p. 861, quoting *Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1003.) If the employer carries this burden, the burden then shifts to the employee to "demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual[] or that the employer acted with a discriminatory animus." (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038, italics omitted.) Evidence is "substantial" only if it is "specific" and ""'based on more than mere speculation, conjecture, or fantasy.""" (*Batarse v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 820, 834; *McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1537 (*McGrory*); *Cheal v. El Camino Hospital* (2014) 223 Cal.App.4th 736, 754-755.)

9

**B.** *Analysis*

Because the only adverse employment action alleged by plaintiff is the failure of UCLA Extension to automatically place him permanently into the director position that he was filling on an interim basis, we focus on whether there are any triable issues of material fact as to whether UCLA Extension denied him that position on the basis of his Persian Muslim identity.

UCLA Extension carried its initial burden of establishing that its failure to make Abbassi's interim position permanent was based on legitimate reasons unrelated to unlawful discrimination—namely, that the new dean reframed the position to encompass different duties than Abbassi was performing on an interim basis, UCLA Extension decided to conduct a nationwide search for this reframed position pursuant to its policy of an open recruitment process for director-level positions, and Abbassi never applied for the position and thus took himself out of the running. (Accord, *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802 [prima facie case of discrimination requires plaintiff to show he "applied . . . for [the] job"].)

However, Abbassi has not carried his responsive burden of producing substantial evidence showing that UCLA Extension's legitimate reasons were untrue or that UCLA Extension otherwise acted with a discriminatory motive. Abbassi points to four categories of evidence.

First, Abbassi argues that UCLA Extension's failure to automatically appoint him to the permanent Senior Director of Marketing position is merely the latest in a series of chapters of being treated differently than other employees at UCLA Extension. More specifically, he argues that the interim co-deans and the new dean did not treat other employees with

10

unprofessional words and deeds meant to undermine their ability to succeed, and that the appointment of three other interim directors to permanent positions while denying him such an automatic elevation was the proverbial icing on the cake. Abbassi surmises that, because he is a superlative employee, the only possible basis for this differential treatment is because he is Persian Muslim.

This argument fails for several reasons. To begin, Abbassi did not establish that he is similarly situated to the other three individuals who were appointed to permanent positions after holding their positions on an interim basis: Abbassi supplies emails announcing their permanent appointments, but there is no evidence indicating the nature of the positions, the employees' qualifications, or the needs of UCLA Extension to fill the vacancies at the time; more to the point, there is no evidence showing why UCLA Extension's policy for a national search should not apply to Abbassi's position. (See *McGrory*, *supra*, 212 Cal.App.4th at pp. 1534-1535 [affirming summary judgment where evidence of disparate treatment insufficient to show employer's proffered justification was untrue or pretextual].) Further, the way Abbassi was treated vis-à-vis his work product, even if we assume it was different than how other employees were treated, does not create a triable issue. (See *Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 428 ["benign" comments, even if made in an "intimidating" and "aggressive" manner, raise only "a weak suspicion of discriminatory animus and do[] not amount to substantial evidence of discriminatory animus necessary to defeat a summary judgment motion"].) Critically, the sole link between any differential treatment and an impermissible motive is Abbassi's surmise that the only

11

possible basis for differential treatment he suffered must be his race/national origin.  But this is, at bottom, nothing more than Abbassi's subjective opinion—as he offered no admissible evidence that any decision maker at UCLA Extension has expressed any discriminatory animus against him, about him, or toward his race or national origin.  It is well settled that a plaintiff's subjective beliefs about a defendant's motives do not create a triable issue of fact.  (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1159; *Serri*, *supra*, 226 Cal.App.4th at p. 862 ["It is not sufficient for an employee . . . to speculate as to discriminatory motive"].)

Second, Abbassi argues that the evidence from two other UCLA Extension employees stating the environment at the workplace was "discriminatory" and "toxic" raises a triable issue. It does not.  These statements are generalized and unconnected in any way to plaintiff, to the decision makers in this case, or to the specific decision plaintiff challenges in this case.  (*Trovato v. Beckman Coulter, Inc.* (2011) 192 Cal.App.4th 319, 325 ["conclusory statements" in declaration that supervisor was harassing are "not sufficient to raise triable issue of material fact"]; *Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196 [plaintiff cannot avoid summary judgment "by 'cryptic, broadly phrased, and conclusory assertions'"].)  Further, "bigoted thoughts or beliefs by themselves" are not actionable under FEHA because FEHA "does not prohibit discrimination 'in the air.'" (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 231.)

Third, Abbassi argues that the declarations of the interim co-deans and new dean that they did not know Abbassi was Persian or was Muslim is so "unfathomable" that their declarations must be rejected out of hand, thereby establishing

12

that they *did* act with discriminatory motive. To begin, Abbassi is effectively asking us to deny summary judgment based on the lack of credibility of certain declarants, but summary judgment "shall not be denied on grounds of credibility." (Code Civ. Proc., § 437c, subd. (e).) What is more, while we agree that the decision makers disclaimed awareness of Abbassi's race/national origin, we disagree that their statements are inherently incredible merely because, according to Abbassi, they *must have known* he was Persian and Muslim based on his "name, physical appearance and accent." We reject Abbassi's invitation to engage in the type of reasoning by stereotype that is "anathema in our courts." (*People v. Johnson* (1978) 22 Cal.3d 296, 299.)

Fourth, Abbassi argues that one of the interim co-deans was overheard telling another Persian Muslim employee, "Maybe you would be more comfortable if we gave you a tent and a camel." While this comment is contemptible, the sole evidence of this comment was excluded as hearsay (because it was relayed second-hand); because Abbassi has not challenged that evidentiary ruling, this comment is not properly before us. (*Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1113; *Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014-1015.)

Because Abbassi's discrimination claim fails for lack of triable issues on the element of motive, we have no occasion to consider whether it also fails for lack of triable issues on whether Abbassi suffered an adverse employment action by not obtaining a position he did not apply for.

## II. Harassment

### A. *Pertinent law*

FEHA also makes it unlawful "[f]or an employer . . . or any other person, because of race . . . [or] national origin . . . to harass

13

an employee." (Gov. Code, § 12940, subd. (j)(1).) To prevail on a harassment claim under FEHA, an employee-plaintiff must show, among other things, that he was subjected to unwelcomed harassment on the basis of a protected characteristic and that the harassment was severe or pervasive enough to alter the conditions of employment and create a hostile or abusive work environment. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 461-462; *Bailey, supra*, 16 Cal.5th at pp. 626-627.) Whether harassment is sufficiently severe or pervasive to create a hostile or abusive work environment is not based on "a mathematically precise test" (*Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 22); instead, we must consider the totality of the circumstances, including the frequency of the conduct, its severity, whether it was physically threatening or humiliating or instead a "mere offensive utterance," and whether it unreasonably interfered with the employee's work performance (*Bailey*, at p. 628).

## B.  *Analysis*

The undisputed facts establish that the supervisors at UCLA Extension did not engage in conduct toward Abbassi that was sufficiently severe or pervasive to create a hostile work environment.[5] Abbassi's complaints about being singled out for harsh criticism in meetings, experiencing stress under budget cuts to his department, and feeling iced out by the new dean falls short on each of the pertinent factors. This conduct occurred a

---

[5]  We focus solely on the conduct of Abbassi's supervisors because that is the only conduct Abbassi cited when opposing summary judgment and on appeal. We therefore do not recount or rely upon the conduct of a co-worker Abbassi mentioned in his deposition.

handful of times over the two years Abbassi held the interim position; the conduct certainly was not threatening or offensive; and there is no evidence that the conduct interfered with his work performance.  Nothing about such "isolated, sporadic, [and] trivial" conduct is actionable under FEHA.  (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 283; see also *Bailey*, *supra*, 16 Cal.5th at p. 628 ["""[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious),'" are not sufficient to create an actionable claim of harassment"].)  Indeed, the complained-of conduct—namely, supervisors criticizing job performance, managing budgets, and deciding who will attend meetings—is "a normal part of the employment relationship" and thus does not, without more, come within the meaning of harassment under FEHA.  (*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160; *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 64-65; cf. *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 25 [discipline or criticism are normal part of the employment relationship].)  The reports of Abbassi's coworkers that the work environment at UCLA Extension was "toxic" is, as noted above, too generalized to create a triable issue of material fact.

## DISPOSITION

The judgment is affirmed.  The Regents are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, P.J.
HOFFSTADT

We concur:

_____, J.
MOOR

_____, J.
KIM (D.)